## TRANSPORTATION COMPANY *v.* CHICAGO.

1. That which the law authorizes cannot be a nuisance such as to give a common-law right of action.
2. A municipal corporation, authorized by law to improve a street by building on the line thereof a bridge over, or a tunnel under, a navigable river, where it crosses the street, incurs no liability for the damages unavoidably caused to adjoining property by obstructing the street or the river, unless such liability be imposed by statute.
3. If the fee of the street is in the adjoining lot-owners, the State has an easement to adapt the street to easy and safe passage over its entire length and breadth. When making or improving the streets within its limits, in the exercise of an authority conferred by statute, a city is the agent of the State, and, if it acts within that authority, and with due care, despatch, and skill, is not at common law answerable for consequential damages.
4. Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, although their consequences may impair its use, are not a taking within the meaning of the constitutional provision which forbids the taking of such property for public use without just compensation therefor.
5. The owner who makes excavations on his land is liable, if he thereby deprives that of adjoining proprietors of its lateral support, while it is in its natural condition; but their right to such support does not protect whatever they have placed upon the soil increasing the downward and lateral pressure.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This is an action of trespass on the case by the Northern Transportation Company of Ohio against Chicago, Ill., to recover damages sustained by reason of the construction by that city of a tunnel under the Chicago River along the line of La Salle Street. The company offered evidence tending to prove that it possessed a certain lot in Chicago, with dock and wharfing rights and privileges; that it owned a line of steamers running between Ogdensburgh, New York, and Chicago, and touching at intermediate points; that during 1869 and 1870 it

had thirteen or fourteen of them employed, five of them arriving and departing each week from its dock on said lot, where it had, at an expense of $17,000, constructed a warehouse and shed used in loading and unloading them, and where its office was located; that its dock extended eighty feet on the south side of the lot which abutted on the Chicago River, a navigable stream; that the city commenced, Nov. 1, 1869, building a tunnel under the river on the east line of the lot at its intersection with the river and La Salle Street, and erected a coffer-dam in front of the dock; that said dam remained until some time in August, 1870; that about Nov. 1, 1869, the city commenced excavating La Salle Street, and excavated it for some distance, blocking up the doors of the warehouse on that street, and leaving free only the entrance on Water Street; that by reason of the construction of said dam plaintiff was unable to bring its boats up to the dock or to land freight and passengers thereat, and was compelled to rent and remove to other docks and sheds; and that the negligent and improper manner in which the work, especially the excavating, was done, greatly damaged and injured the warehouse, and caused the walls to crack, settle, and in several places to fall.

The city offered testimony tending to prove that the work was, without unnecessary delay, well and carefully done; that the coffer-dam as constructed was required for the construction of the tunnel; that the company could during the time have had access with its boats to a portion of the lot; and that the obstructions complained of were unavoidable in the proper construction of the tunnel.

To the following portions of the charge of the court to the jury the plaintiff excepted: —

"The defendant had the right under the law to enter upon La Salle Street and make such public improvements as in the judgment of the city authorities were necessary, and to construct the tunnel in question; and for that purpose to enter upon the portion of the river in front of the plaintiff's lot and construct the coffer-dam there, if it was necessary to enable them to construct the tunnel."

"The plaintiff took its lot subject to the right of the city to

make these necessary public improvements in the streets. The method of crossing the river at this point, whether by a ferry, a bridge, or a tunnel, was one to be determined by the city authorities; and when they had determined to effect the crossing by a tunnel, they had a right to use and occupy so much of the street as was necessary to construct the tunnel, using due skill and care and despatch always in doing it, so as not unnecessarily to interfere with private property."

"Although the plaintiff may for the time being have been deprived of the beneficial use of its property by such entry upon the street, and access to the property through the street practically prevented by the occupation of the street for the purposes of constructing the tunnel, and although access to the lot from the river may have been partially prevented during this time, yet these were incidental inconveniences, to which the plaintiff, as the owner of this lot, must submit in order that the public may be accommodated by the construction of this tunnel. The city had the same right to enter upon the river for the purpose of erecting works there to facilitate the construction of the tunnel that it had to enter upon the street and construct the tunnel itself, always, however, subject to the condition that they should not unnecessarily or negligently injure the plaintiff."

"There is left, however, the question to be considered by you in the light of the evidence as to whether this work in La Salle Street was so unskilfully or negligently done as to cause any part of the walls to fall or the building to be impaired. You have heard all the testimony bearing upon this question. It shows that the southeast corner of the warehouse, where the office and vault were situated, became so impaired by the cracking or leaning of the wall outwardly that it was deemed necessary to take it down; and it was taken down and rebuilt. Although there was no apparent settling of the ground in the immediate vicinity, nor any caving in, yet the wall seemed to fall from some cause from that point, and the claim is that it fell from the construction of this tunnel by some displacement of the surface, which was, perhaps, not apparent to the eye. You will also bear in mind that the evidence shows that further along, near the north end of the plaintiff's building, there was

a caving in of the bank, so that the earth near, or perhaps immediately under, the wall was to some extent displaced. The wall fell down there and was subsequently rebuilt, and the building repaired to some extent. You have heard all the testimony in regard to the extent of the repairs, and to the manner in which the building was left, and it is for you to say whether the building was substantially restored to its original condition by the repairs which were made, so that the plaintiff, on the removal of the coffer-dam, and the other obstructions to the access to the property, could again enter into the enjoyment of his property as fully as before. If you are satisfied that the building was not so far repaired as to make it as useful for the plaintiff's purposes as it was before these injuries occurred, then the plaintiff will be entitled to recover such damages as would make it as useful for his purposes."

The plaintiff asked the court to instruct the jury " that even if the city be entitled to lay a coffer-dam along across the river, they had no right to lay it in front of the company's lot and dock, and for any damages which it may have suffered by the coffer-dam being in front of its dock it is entitled to recover in this action ; " but the court refused ; the presiding judge stating, " I refuse the instruction, always assuming that the proof shows that the coffer-dam was a necessity. I look upon the river just as I do the street. The city had the same right to go into the river and construct a coffer-dam, in order to complete this work, that it had to go into a street and put down a track or any other work necessary in order to carry on improvements." To which the plaintiff duly excepted.

The court, on motion of the defendant, further charged the jury, " If you are satisfied from the evidence that the sinking or rather the cracking of the wall was due to the weight of the walls upon the selvage or portion of the earth which was left, and not to the removal of the material taken out of the street, that is, from the pit, then the defendant would not be liable. If you are satisfied that if the wall had not stood upon the plaintiff's lot at the place where it did, there would have been no change in the level of the ground there, but that the change in the level which caused the deflection of the wall was caused by the weight of the wall resting upon

the earth after the excavation was made, then the defendant is not liable. The principle is precisely like two adjacent owners, one man building a building and sinking his foundation four feet into the ground, the adjoining owner may think it is necessary for him to set his six or ten feet into the ground, and he excavates for that purpose. Now, if the first wall built, by reason of its own weight, causes the earth to crush or cave away after the excavation below there has been made upon the adjoining lot, the owner of the adjoining lot making the deeper excavation is not liable. Each man, in other words, must look out for his own foundation." To all of which the plaintiff excepted.

There was a verdict for the defendant. Judgment was rendered thereon, and the company sued out this writ of error.

*Mr. R. P. Spalding* for the plaintiff in error.

*Mr. Joseph F. Bonfield,* contra.

MR. JUSTICE STRONG delivered the opinion of the court.

We are of opinion that no error has been shown in this record, though the assignments are very numerous. The action was case to recover damages for injuries alleged to have been sustained by the plaintiffs in consequence of the action of the city authorities in constructing a tunnel or passageway along the line of La Salle Street and under the Chicago River, where it crosses that street. The plaintiffs were the lessees of a lot bounded on the east by the street, and on the south by the river, and the principal injury of which they complain is, that by the operations of the city they were deprived of access to their premises, both on the side of the river and on that of the street, during the prosecution of the work. It is not claimed that the obstruction was a permanent one, or that it was continued during a longer time than was necessary to complete the improvement. Nor is it contended that there was unreasonable delay in pushing the work to completion, or that the coffer-dam constructed in the river, extending some twenty-five or thirty feet in front of the plaintiff's lot, was not necessary, indeed indispensable, for the construction of the tunnel.

The case has been argued on the assumption that the

erection of the coffer-dam, and the necessary excavations in
the street, constituted a public nuisance, causing special dam-
age to the plaintiffs, beyond those incident to the public at
large, and hence, it is inferred, the city is responsible to them
for the injurious consequences resulting therefrom. The an-
swer to this is that the assumption is unwarranted. That
cannot be a nuisance, such as to give a common-law right of
action, which the law authorizes. We refer to an action at
common law such as this is. A legislature may and often
does authorize and even direct acts to be done which are harm-
ful to individuals, and which without the authority would be
nuisances; but in such a case, if the statute be such as the
legislature has power to pass, the acts are lawful, and are
not nuisances, unless the power has been exceeded. In such
grants of power a right to compensation for consequential in-
juries caused by the authorized erections may be given to those
who suffer, but then the right is a creature of the statute. It
has no existence without it. If this were not so, the suffering
party would be entitled to repeated actions until an abate-
ment of the erections would be enforced, or perhaps he might
restrain them by injunction.

Here the tunnel of which the plaintiffs complain, or rather
its construction, was authorized by an act of the legislature of
the State, and directed by an ordinance of the city councils.
This we do not understand to be denied, and it certainly can-
not be. The State, and the city councils, as its agents, had
full power over the highways of the city, to improve them for
the uses for which they were made highways, and the con-
struction of the tunnel was an exercise of that power. Since
La Salle Street was extended across the river, the city not only
had the power, but it was its duty, to provide for convenience
of passage. This it could do either by the erection of a
bridge, or by the construction of a tunnel under the river and
along the line of the street. And the grant of power by the
legislature to build a bridge or construct a tunnel carried
with it, of course, all that was necessary for the exercise of
the power. We do not understand this to be controverted by
the plaintiffs in error. Their argument is, that though the
city had the legal right to construct the tunnel, and to do

what was necessary for its construction, subject to the condi
tion that in doing the work there should be no unnecessary
interference with private property, yet it was liable to make
compensation for the consequential damages caused to persons
specially injured.    To this we cannot assent.

It is immaterial whether the fee of the street was in the
State or in the city or in the adjoining lot-holders.    If in
the latter, the State had an easement to repair and improve
the street over its entire length and breadth, to adapt it to
easy and safe passage.

It is undeniable that in making the improvement of which
the plaintiffs complain the city was the agent of the State,
and performing a public duty imposed upon it by the legisla-
ture ; and that persons appointed or authorized by law to make
or improve a highway are not answerable for consequential
damages, if they act within their jurisdiction and with care
and skill, is a doctrine almost universally accepted alike in
England and in this country.    It was asserted unqualifiedly in
*The Governor and Company of the British Cast-Plate Manu-
facturers* v. *Meredith,* 4 Durnf. & E. 794; in *Sutton* v. *Clarke,*
6 Taun. 23; and in *Boulton* v. *Crowther,* 2 Barn. & Cres. 703.
It was asserted in *Green* v. *The Borough of Reading,* 9 Watts
(Pa.), 382; *O'Connor* v. *Pittsburg,* 18 Pa. St. 187; in *Callen-
dar* v. *Marsh,* 1 Pick. (Mass.) 418; as well as by the courts
of numerous other States.    It was asserted in *Smith* v. *The
Corporation of Washington* (20 How. 135), in this court; and it
has been held by the Supreme Court of Illinois.    The deci-
sions in Ohio, so far as we know, are the solitary exceptions.
The doctrine, however it may at times appear to be at variance
with natural justice, rests upon the soundest legal reason.
The State holds its highways in trust for the public.    Im-
provements made by its direction or by its authority are its
acts, and the ultimate responsibility, of course, should rest upon
it.    But it is the prerogative of the State to be exempt from
coercion by suit, except by its own consent.    This prerog-
ative would amount to nothing if it does not protect the
agents for improving highways which the State is compelled
to employ.    The remedy, therefore, for a consequential injury
resulting from the State's action through its agents, if there

be any, must be that, and that only, which the legislature shall give.  It does not exist at common law.  The decisions to which we have referred were made in view of Magna Charta and the restriction to be found in the constitution of every State, that private property shall not be taken for public use without just compensation being made.  But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.  They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action.  This is supported by an immense weight of authority.  Those who are curious to see the decisions will find them collected in Cooley on Constitutional Limitations, page 542 and notes. The extremest qualification of the doctrine is to be found, perhaps, in *Pumpelly* v. *Green Bay Company*, 13 Wall. 166, and in *Eaton* v. *Boston, Concord, & Montreal Railroad Co.*, 51 N. H. 504.  In those cases it was held that permanent flooding of private property may be regarded as a " taking."  In those cases there was a physical invasion of the real estate of the private owner, and a practical ouster of his possession.  But in the present case there was no such invasion.  No entry was made upon the plaintiffs' lot.  All that was done was to render for a time its use more inconvenient.

The present Constitution of Illinois took effect on the 8th of August, 1870, after the work of constructing the tunnel had been substantially completed.  It ordains that private property shall not be " taken or *damaged* " for public use without just compensation.  This is an extension of the common provision for the protection of private property.  But it has no application to this case, as was decided by the Supreme Court of the State in *Chicago* v. *Rumsey*, recently decided, and reported in Chicago Legal News, vol. x. p. 333.  That case also decides that the city is not liable for consequential damages resulting from an improvement made in the street, the fee of which is in the city, provided the improvement had the sanction of the legislature.  It also decides that La Salle Street is such a street, and declares that a recovery of such damages by an

adjacent lot-holder has been denied by the settled law of the State up to the adoption of the present Constitution. There would appear, therefore, to be little left in this case for controversy. ·

It is insisted, however, that the plaintiffs may recover for the obstruction to the access of their lot, caused by the coffer-dam in the river. It is admitted that the dam was necessary to enable the city to construct the tunnel under the river; and it is not complained that it was unskilfully built, or that it was kept in the stream longer than the necessities of the work required, but it is contended that neither the State nor the city had any right to obstruct passage on the river at all. Yet the river is a highway, a State highway as well as a national. It has long been held that navigable rivers wholly within a State are not outside of State jurisdiction so long as Congress does not interfere. · An abridgment of the rights of those who have been accustomed to use them, unless it comes in conflict with the Constitution or a law of the United States, is an affair between the government of the State and its citizens, of which this court can take no cognizance. *Wilson* v. *The Black Bird Creek Marsh Co.*, 2 Pet. 250. In numerous instances, States have authorized obstructions in navigable streams. They have authorized the erection of bridges, the piers of which have been more or less impediments to navigation. · In this case the coffer-dam was only a temporary obstruction. It was no physical encroachment upon the plaintiffs' property, and it was maintained only so long as it was needed for the public improvement. The tunnel could not have been constructed without it. We cannot doubt that it was lawfully placed where it was, and having thus been, that the city is not responsible in damages for having erected and maintained it while discharging the duty imposed by the legislature, the obstruction not having been permanent or unreasonably prolonged.

We have examined the decisions of the courts of Illinois, and others to which we have been referred by the plaintiffs in error, but in none of them was it decided that a riparian owner on a navigable stream, or that an adjoiner on a public highway, can maintain a suit at common law against public agents

to recover consequential damages resulting from obstructing a stream or highway in pursuance of legislative authority, unless that authority has been transcended, or unless there was a wanton injury inflicted, or carelessness, negligence, or want of skill in causing the obstruction.

Very many of the decisions relied upon were cases in which it appeared that the acts complained of as having wrought injurious consequences were done by private individuals, for their own benefit, and without sufficient legislative authority. The distinction between cases of that kind and such as the present is very obvious. It was well stated by Gibbs, C. J., in *Sutton* v. *Clarke (supra)*, which, as we have seen, was decided on the ground that the defendant was acting under the authority of an act of Parliament, deriving no advantage to himself personally, and acting to the best of his skill and within the scope of his authority, and so was not liable for consequential damages. " This case," said the Chief Justice, " is totally unlike that of the individual who for his own benefit makes an improvement on his own land according to his best skill and diligence, not foreseeing it will produce injury to his neighbor ; if he thereby, though unwittingly, injure his neighbor, he is liable. The resemblance fails in this most important point, that his act is not done for a public purpose but for private emolument. Here the defendant is not a volunteer : he executes a duty imposed upon him by the legislature, which he is bound to execute."

The observations we have made cover the whole case as made for the plaintiffs in error, except the point presented by the sixteenth assignment. That was not mentioned in the argument, but we will not overlook it.

There was evidence at the trial that during the progress of the necessary excavation of La Salle Street a portion of the walls of the plaintiffs' buildings on the lot cracked and sunk. This was caused by the caving in of the excavation in the street, the timbers used for bracing the sides having given way. In reference to this testimony the court instructed the jury that if they were satisfied from the evidence that the sinking of the wall, or rather the cracking of the wall, was due to the weight of the wall upon the selvage or portion of the earth which was left, and not to the removal of the material

which was taken out of the street, that is, from the pit, the defendants were not liable. If they were satisfied that if the wall had not stood upon the plaintiffs' lot where it did there would have been no change in the level of the ground there, but that the change in the level which caused the deflection of the wall was due to the weight of the wall resting upon the earth after the excavation was made, then the defendant was not liable for that.

We think this instruction was entirely right. The general rule may be admitted that every land-owner has a right to have his land preserved unbroken, and that an adjoining owner excavating on his own land is subject to this restriction, that he must not remove the earth so near to the land of his neighbor that his neighbor's soil will crumble away under its own weight and fall upon his land. But this right of lateral support extends only to the soil in its natural condition. It does not protect whatever is placed upon the soil increasing the downward and lateral pressure. If it did, it would put it in the power of a lot-owner, by erecting heavy buildings on his lot, to greatly abridge the right of his neighbor to use his lot. It would make the rights of the prior occupant greatly superior to those of the latter. *Wyatt* v. *Harrison,* 3 Barn. & Adol. 871; *Lasala* v. *Holbrook,* 4 Paige (N. Y.), 169; Washburn, Easements, c. 4, sect. 1.

*Judgment affirmed.*