CHICAGO *v.* TAYLOR.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 151. Submitted January 31, 1888. — Decided March 19, 1888.

Under the provision in the constitution of the State of Illinois adopted in 1870 that "private property shall not be taken or *damaged* for public use without just compensation," a recovery may be had in all cases where private property has sustained a substantial injury from the making and use of an improvement that is public in its character; whether the damage be direct, as when caused by trespass or physical invasion of the property, or consequential as in a diminution of its market value.

TRESPASS ON THE CASE. Judgment for plaintiffs. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Frederick S. Winston* and *Mr. John W. Green* for plaintiff in error.

*Mr. George A. Follansbee* and *Mr. Thomas M. Hoyne* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by Moses Taylor, as owner of an undivided interest in a lot in Chicago, having sixty feet front on Lumber Street, one hundred and fifty feet on Eighteenth Street, and three hundred feet on the South Branch of Chicago River, to recover the damages sustained by reason of the construction, by that city, of a viaduct on Eighteenth Street, in the immediate vicinity of said lot. The city did this work under the power conferred by its charter "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and public grounds, and vacate the same," and "to construct and keep in repair bridges, viaducts and tunnels, and to regulate the use thereof." It appears that the construction of the viaduct was directed by special ordinances of the city council.

For many years prior to, as well as at, the time this viaduct was built, the lot in question was used as a coal yard, having upon it sheds, machinery, engines, boilers, tracks, and other contrivances required in the business of buying, storing, and selling coal. The premises were long so used, and they were peculiarly well adapted for such business. There was evidence before the jury tending to show that, by reason of the construction of the viaduct, the actual market value of the lot, for the purposes for which it was specially adapted, or for any other purpose for which it was likely to be used, was materially diminished, access to it from Eighteenth Street being greatly obstructed, and at some points practically cut off; and that, as a necessary result of this work, the use of Lumber Street, as a way of approach to the coal yard by its occupants and buyers, and as a way of exit for teams carrying coal from the yard to customers, was seriously impaired. There was, also, evidence tending to show that one of the results of the

construction of the viaduct, and the approaches on either side of it to the bridge over Chicago River, was, that the coal yard was often flooded with water running on to it from said approaches, whereby the use of the premises, as a place for handling and storing coal was greatly interfered with, and often became wholly impracticable.

On behalf of the city there was evidence tending to show that the plaintiff did not sustain any real damage, and that the inconveniences to occupants of the premises, resulting from the construction and maintenance of the viaduct, were common to all other persons in the vicinity, and could not be the basis of an individual claim for damages against the city.

There was a verdict and judgment against the city. The court below having refused to set aside the judgment and grant a new trial, the case has been brought here for review in respect to errors of law which, it is contended, were committed in the admission of incompetent evidence, in the refusal of instructions asked by the city, and in the charge of the court to the jury.

Before noticing the assignments of error it will be well to ascertain what principles have been announced by this court or by the Supreme Court of Illinois in respect to the liability of municipal or other corporations in that State, for damages resulting to owners of private property from the alteration or improvement, under legislative authority, of streets and other public highways.

By the constitution of Illinois, adopted in 1848, it was provided that no man's property shall "be taken or applied to public use without just compensation being made to him." Art. XIII, § 11. While this constitution was in force Chicago commenced, and substantially completed, a tunnel under Chicago River, along the line of La Salle Street, in that city. It was sued for damages by the Northern Transportation Company, owning a line of steamers running between Ogdensburg, New York, and Chicago, and also a lot in the latter city, with dock and wharfage privileges, the principal injury of which it complained being that, during the prosecution of the work by the city, it was deprived of access to its premises, both on the

side of the river and on that of the street.   This court — in
*Transportation Co.* v. *Chicago,* 99 U. S. 635, 641 — held that in
making the improvement of which the plaintiff complained
the city was the agent of the State, performing a public duty
imposed by the legislature; and that "persons appointed or
authorized by law to make or improve a highway are not
answerable for consequential damages, if they act within their
jurisdiction, and with care and skill, is a doctrine almost
universally accepted, alike in England and in this country," —
citing numerous cases, among others *Smith* v. *Corporation of
Washington,* 20 How. 135.   "The decisions to which we have
referred," the court continued, "were made in view of Magna
Charta, and the restriction to be found in the constitution of
every State, that private property shall not be taken for public
use without just compensation being made.   But acts done in
the proper exercise of governmental powers, and not directly
encroaching upon private property, though their consequences
may impair its use, are universally held not to be a taking
within the meaning of the constitutional provision.   They do
not entitle the owner of such property to compensation from
the State or its agents, or give him any right of action."   This
view, the court further said, was not in conflict with the doc-
trine announced in *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166,
which was a case of the permanent flooding of private prop-
erty, a physical invasion of the real estate of the private
owner, a practical ouster of his possession.

In *City of Chicago* v. *Rumsey,* 87 Illinois, 348, 363, the Su-
preme Court of Illinois, upon a full review of previous decis-
ions and especially referring to *Moses* v. *Pittsburg, Fort Wayne
& Chicago R. R. Co.,* 21 Illinois, 516; *Roberts* v. *Chicago,* 26
Illinois, 249; *Murphy* v. *Chicago,* 29 Illinois, 279; *Stone* v.
*Fairbury, Pontiac and Northwestern Railroad Co.,* 68 Illinois,
394; *Stetson* v. *The Chicago and Evanston Railroad Co.,* 75
Illinois, 74, and *Chicago, Burlington and Quincy Railroad Co.*
v. *McGinnis,* 79 Illinois, 269, held it to have been the settled
law of that State, up to the time of the adoption of the con-
stitution of 1870, that there could be "no recovery by an ad-
jacent property holder, on streets the fee whereof is in the city,

for the merely consequential damages resulting from the character of the improvements made in the streets, provided such improvement has the sanction of the legislature."

But the present case arose under, and must be determined with reference to, the constitution of Illinois adopted in 1870, in which the prohibition against the appropriation of private property for public use, without compensation, is declared in different words from those employed in the constitution of 1848. The provision in the existing constitution is that " private property shall not be taken *or damaged* for public use without just compensation." An important inquiry in the present case is to the meaning of the word " damaged " in this clause.

The earliest case in Illinois in which this question was first directly made and considered, is *Rigney* v. *City of Chicago*, 102 Illinois, 64, 74, 80. That was an action to recover damages sustained by the plaintiff by reason of the construction by Chicago of a viaduct or bridge along Halstead Street and across Kinzie Street, in that city, some 220 feet west of his premises, fronting on the latter street. There was no claim that the plaintiff's possession was disturbed, or that any direct physical injury was done to his premises by the structure in question. But the complaint was, that his communication with Halstead Street, by way of Kinzie Street, had been cut off, whereby he was deprived of a public right enjoyed by him in connection with his premises, and an injury inflicted upon him in excess of that sustained by the public. For that special injury, in excess of the injury done to others, he brought suit. The trial court peremptorily instructed the jury to find for the city, holding, in effect, that the fee of the streets being in the city there could be no recovery for the obstruction of which the plaintiff complained.

That judgment was reversed, an elaborate opinion being delivered, reviewing the principal cases under the Constitution of 1848, and referring to the adjudications in the courts of other States upon the general question as to what amounts to a taking of private property for public use within the meaning of such a provision as that contained in the former Constitution of Illinois. After alluding to the decisions of other state

courts to the effect that such a provision extended only to an actual appropriation of property by the State, and did not embrace consequential injuries, although what was done resulted, substantially, in depriving the owner of its use, the Supreme Court of Illinois reviewed numerous cases determined by it under the Constitution of 1848. *Nevins* v. *City of Peoria*, 41 Illinois, 502, decided in 1866; *Gillam* v. *Madison County Railroad*, 49 Illinois, 484; *City of Aurora* v. *Gillett*, 56 Illinois, 132; *Aurora* v. *Reed*, 57 Illinois, 29; *City of Jacksonville* v. *Lambert*, 62 Illinois, 519; *Toledo, Wabash &c. Railroad* v. *Morrison*, 71 Illinois, 616. It says: "Whatever, therefore, may be the rule in other States, it clearly appears from this review of the cases that previous to, and at the time of the adoption of the present Constitution, it was the settled doctrine of this court that any actual physical injury to private property by reason of the erection, construction, or operation of a public improvement in or along a public street or highway, whereby its appropriate use or enjoyment was materially interrupted, or its value substantially impaired, was regarded as a taking of private property, within the meaning of the Constitution, to the extent of the damages thereby occasioned, and actions for such injuries were uniformly sustained."

Touching the provision in the Constitution of 1870, the court said that the framers of that instrument evidently had in view the giving of greater security to private rights by giving relief in cases of hardship not covered by the preceding Constitution, and for that purpose extended the right to compensation to those whose property had been "damaged" for public use; that the introduction of that word, so far from being superfluous or accidental, indicated a deliberate purpose to make a change in the organic law of the State, and abolished the old test of direct physical injury to the *corpus* or subject of the property affected. The new rule of civil conduct, introduced by the present Constitution, the court adjudged, required compensation in all cases where it appeared "there has been some physical disturbance of a *right*, either public or private, which the plaintiff enjoys *in connection with his property*, and which gives to it an additional value, and

that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." The chief justice concurred in the judgment, and in the general views expressed by the court, holding that while the owner of a lot on a street held it subject to the right of the public to improve it in any ordinary and reasonable mode deemed wise and beneficial by the proper public functionaries, he was entitled, under the constitution of 1870, to compensation in case of a sudden and extraordinary change in the grade of the street or highway, whereby the value of his property is in fact impaired. Three of the justices of the state court dissented.

As we understand the previous cases of *Pekin* v. *Brereton*, 67 Illinois, 477; *Pekin* v. *Winkel*, 77 Illinois, 56; *Shawneetown* v. *Mason*, 82 Illinois, 337; *Elgin* v. *Eaton*, 83 Illinois, 535; and *Stack* v. *St. Louis*, 85 Illinois, 377; — all of which arose under the present Constitution of Illinois — they proceeded upon the same grounds as those expressed in *Rigney* v. *Chicago*, although in no one of them did the court distinctly declare how far the present Constitution differed from the former, in respect to the matter now before us.

At the same term when Rigney's case was decided the state court had occasion to consider this question as presented in a somewhat different aspect. The Union Building Association owned a building and lot three and a half blocks from a certain part of La Salle Street in Chicago, which the city proposed to close up, and permit to be occupied by the Board of Trade with its building. As the streets adjacent to the plaintiff's property were to remain in the same condition as to width, etc., that they were in before, and as the closing up of a portion of La Salle Street would not, in any degree, interfere with access to its lot, or with the use and enjoyment of it, it was held that there was no special or particular injury done for which an action would lie against the city. That case was distinguished from *Rigney* v. *Chicago*, in this, that in the latter case the court held that "property holders bordering upon streets have, as an incident to their ownership of such property, a right of access by way of the streets,

which cannot be taken away or materially impaired by the city, without incurring legal liability to the extent of the damages thereby occasioned." *City of Chicago* v. *Union Building Association*, 102 Illinois, 379, 397.

In *Chicago & Western Indiana Railroad* v. *Ayres*, 106 Illinois, 518, the court — all the justices concurring — observed: "It is needless to say our decisions have not been harmonious on this question, but in the case of *Rigney* v. *City of Chicago*, 102 Illinois, 64, there was a full review of the decision of our courts, as well as the courts of Great Britain, under a statute containing a provision similar to the provision in our Constitution. The conclusion there reached was, that under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character — that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate, but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party may recover. We regard that case as conclusive of this question. The case of *Pittsburg & Fort Wayne Railroad Co.* v. *Reich*, 101 Illinois, 157, is in point on this question of damages, and the case of *City of Chicago* v. *Union Building Association*, 102 Illinois, 379, also reviews the authorities and approves the doctrine in *Rigney* v. *Chicago, supra.* These cases, therefore, overrule the doctrines of the earlier cases." Our attention has not been called to, nor are we aware of, any subsequent decision of the State court giving the Constitution of 1870 an interpretation different from that indicated in *Rigney* v. *Chicago* and *Chicago etc. Railroad Co.* v. *Ayres.* We concur in that interpretation. The use of the word "damaged" in the clause providing for compensation to owners of private property, appropriated to public use, could have been with no other intention than that expressed by the state court. Such a change in the organic law of the State was not meaningless. But it would be meaningless if it should be adjudged that the constitution of 1870 gave no additional or greater security to private property,

sought to be appropriated to public use, than was guaranteed by the former constitution.

The charge to the jury by the learned judge who presided at the trial gave effect to the principles announced in the foregoing cases arising under the present constitution of Illinois. It covered every vital question in the case, in language so well guarded that the jury could not well have misunderstood the exact issue to be tried, or the proper bearing of all the evidence. So far as the special requests for instructions in behalf of the city contained sound propositions of law they were fully embodied in the charge to the jury.

In behalf of the city it was contended that, if liable at all, it was only liable for such damage as was done to the market value of the property by rendering access to it difficult or inconvenient. The court said, in substance, to the jury that the flooding of the lot by water running down upon it from the approaches to the viaduct was an element of damage which they might consider; though if such flooding merely caused inconvenience to the occupant in the conduct of his business, such as his coal getting wet or its becoming more difficult to keep his scales properly adjusted, these were not elements of impairment to the value of the property for purposes of sale. The jury were also instructed that although the occupant may have found it difficult to haul coal out of the lot, and although it may have been much more unprofitable to conduct the business of selling coal at this lot, that did not weigh upon the question as to the value of the lot in the market. Other observations were made to the jury, but the court, in different forms of expression, said to them that the question was whether, by reason of the construction of the viaduct, the value, that is, the market price, of the property had been diminished. The scope of the charge is fairly indicated in the following extract: "The real question is, has the value of this property to sell or rent been diminished by the construction of this viaduct? It may be that it can no longer be used for the purposes of a coal yard, or for any purpose for which it has heretofore been used, but that would not be material if it can be rented or sold at as good a price for other purposes, except that if the proof satis-

fies you that any of the permanent improvements put on the lot for the particular business which has been heretofore carried on there and for which it was improved, have been impaired in value, or are not worth as much after this viaduct was built and the bridge was raised as before, and you can from the proof determine how much these improvements are damaged, the plaintiff would be entitled to recover for such damage to the improvements — that is to say, this lot being improved for a specific purpose, if the proof satisfies you that it can no longer be rented or used for that purpose, and that thereby these improvements have been lost or impaired in value, then the impairment of value to these improvements is one of the elements of damage which the plaintiff is entitled to have considered and passed upon and included in his damage."

It would serve no useful purpose to examine in detail all the requests for instructions, and compare them with the charge, or discuss the questions arising upon exceptions to the admission of evidence. After a careful consideration of all the propositions advanced for the city, we are unable to discover any substantial error committed to its prejudice. It may be, as suggested by its counsel, that the present constitution of Illinois, in regard to compensation to owners of private property "damaged" for the public use, has proved a serious obstacle to municipal improvements; that the sound policy of the old rule, that private property is held subject to any consequential damages that may arise from the erection on a public highway of a lawful structure, is being constantly vindicated; and that the constitutional provision in question is "a handicap" upon municipal improvement of public highways. And it may, also, be, as is suggested, doubtful whether a constitutional convention could now be convened that would again incorporate in the organic law the existing provision in regard to indirect or consequential damage to private property so far as the same is caused by public improvements. We dismiss these several suggestions with the single observation that they can be addressed more properly to the people of the State in support of a proposition to change their constitution.

We perceive no error in the record, and the judgment is

*Affirmed.*