## 220. ELBERT COUNTY *v.* SWIFT.

1. The damages recoverable under the provisions of the constitution of ·of 1877 are for substantial injury to private property, real damage affecting the market value, and not speculative or imaginary damage affecting only the natural beauties of the property.

2. Claims against counties must be presented by written demand to the proper county authorities within 12 months after such claims accrue ·or become payable, or the same are barred, unless held by minors or ·persons laboring under disabilities. Where it appeared from the evi·dence that the above requirement had not been complied with, a ver·dict against the county was unauthorized.

Action for damages, from city court of Elberton—Judge Prof-fitt. January 25, 1907.

Submitted March 26,—Decided May 24, 1907.

*C. P. Harris,* for plaintiff in error. *Z. B. Rogers,* contra.

HILL, C. J. T. M. Swift, for the use of J. Y. Swift, brought suit against Elbert county for damages to land. The trial court overruled a demurrer, and the case was submitted to a jury, which returned a verdict in favor of the plaintiff for $175. A motion for a new trial was made and denied. The defendant excepts to the judgment overruling the demurrer and to the refusal to grant a new trial. This court will not consider the question made by the demurrer, but will decide the case on the merits, as shown by the facts.

The plaintiff was the owner of a certain tract of land located on the public road from Elberton to Petersburg. This tract of land had no improvements upon it, but by reason of many natural advantages, which are fully described in the petition and by the evidence, it was "unsurpassed in beauty and grandeur" as a site for a residence. Besides these natural advantages, it was located directly on the public road, which gave it additional value; and it was the intention of J. Y. Swift, who held the beneficial interest in the property, to erect on the same a family residence. The road which ran between Elberton and Petersburg and directly alongside this property had been the public highway for a long time, and it was by this road that ingress and egress was had to and from the property. The evidence is silent as to the value of the property in question, except that it was "chiefly valuable for a building site." In the spring of 1905 the commissioners of roads and rev-enues of Elbert county cut out, graded, and opened a new road. The new road leaves the old one some distance above the property in question, and comes back into it some distance below. Between this property and the new road there is an embankment of trees and bushes which completely hides the property from the road, "and is a gruesome and unseemly sight in front thereof." Al-though the old road was not closed up, it was practically abandoned by the traveling public, who preferred the new and better road. The old road, however, still remained as a highway, and as a means of ingress and egress, into and from the property. The damage resulting to the property in question by the opening of the

new road was alleged substantially as follows: The property could not be seen from the new road, and therefore its beauty as a building site was destroyed. The property was left off the traveled highway, because the old road is practically abandoned, and has not been worked by the county since the building of the new road. There was no way of getting to the new road from the property, or from the new road to the property, except through the intervening woods, or going for some distance on the old road. Instead of a valuable and beautiful residence site on a public road, which afforded easy access to it, it has become property without special advantages for residence purposes, located on an abandoned, unused, and unworked road. There is no evidence as to the market value of the property before the new road was opened, or since, and no evidence as to value at all, except the single statement, by the owner and his witnesses, that the property has been damaged at least $500 by the opening of the new road and the practical abandonment of the old road. All the witnesses for the plaintiff concurred in the opinion that the property in question was chiefly valuable as a building site because of its natural advantages and of its location alongside the old road, and that it had been damaged by the new road and the abandonment of the old road, for such use, from $500 to $1,000. This is a substantial statement of the material evidence for the plaintiff. Without reference to the evidence for the defendant, does this evidence for the plaintiff make a case for the recovery of damages?

1. Under the constitution of 1877, if private property is damaged by the construction of roads or any improvement made for the use of the public, its owner can recover whatever damage he has actually sustained. *Campbell* v. *Metropolitan Street R. Co.,* 82 *Ga.* 320, 9 S. E. 1078. Under this provision of our constitution a recovery may be had in all cases where private property has sustained a substantial injury from the making and use of an improvement that is public in its character, whether the damage is direct, as when caused by trespass or physical invasion of the property, or consequential, as in the diminution of its market value. *City of Atlanta* v. *Green,* 67 *Ga.* 390; Chicago *v.* Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638. Unquestionably, also the owners of land adjacent to public roads have a private right to have free access to their land and buildings thereon from the roads. 82

4

*Ga*: ·320, 9 S. E. 1078, supra; Street. Ry. *v.* · Cumminsville, 14 Ohio St. 523. Applying these general principles to the facts as shown in behalf of the plaintiff, is this case one for damages? Certainly there is not ,shown any physical injury to his property, or any trespass thereon by the acts of the county commissioners in constructing the new road. Do the facts show any consequential damage, diminishing the market value of the property? Has his private property sustained any substantial injury from the making of the new road? It can not be said that there is any diminution of its market value, for the very simple reason that it is not shown by the evidence to have had any market value either before or since the opening of the new road.

It is contended that its value as a building site has been damaged $500 at least, because it is no longer adjacent to a public road, from which it can be seen, and to which there is easy access. The estimate of this damage is purely speculative, for there is no evidence whatever as to its value as a building site before the new road was made. Abstractly considered, the property still retains all of its natural advantages as· a building site. We think damages might be recoverable for any diminution of the value of the property in connection with the use or uses to which it had been put, or to which it was peculiarly adapted; but we think it entirely too remote and speculative to give damages for a supposed injury ·to the mere ethical value of property for a certain use. Legal redress is given for substantial, and not imaginary injury to property— for damage to market value, and not injury to landscape beauty. In this case the opening of the new road did not affect the physical advantages of the property. It is true "the embankment of trees and bushes" between the road and the property was left, "a gruesome and unwholesome" obstruction intervening between the road and the property; but this obstruction was not placed there by the ruthless hand of the county. It was the unappreciative act of nature. We know of no law that required this unsightly "embankment of trees and bushes" to· be removed by the county authorities, so that the natural beauties of the property could be seen and admired from the public road.

On the question as to interfering with or preventing access to the property from the public road, the evidence shows that the old road is still open, and if the owner of the property desires to use

the same for residential purposes, and to afford the traveling public the benefit of its beauty as they pass on by, or to afford him convenient ingress and egress to and from the public road, he has only to call upon the county authorities, under the act of 1903 (Acts 1903, p. 41), to work this road and keep it in proper condition. It is somewhat remarkable that, notwithstanding the fact that this property was so unsurpassed in its beauty for residence purposes, it had never been improved by the present owner, although he had been in possession thereof for many years. The unsurpassed advantages of this favored spot for an "ideal country home" seem to have been overlooked or neglected by those who so greatly appreciated its beauties until the opening of the new road. This public improvement was the flashlight that brought into view and value the hidden beauties of the place. We do not know of any law that requires a county to pay damages to a private citizen whose eyes have only been opened to the beauties of his private property by an improvement of public utility.

2. All claims against counties must be presented within 12 months after they accrue. Pol. Code, §362. The allegation of the petition is that "in the spring of 1905" the county cut out, graded, and built the new road which damaged the property, and that the petitioner "made a written demand on the defendant for the sum of $500 damages," which had been refused. No time is stated when such written demand was made. The evidence on the subject is that the attorney for the plaintiff handed to the clerk of the board of commissioners a written claim for damages, in the amount of $500, and that the board received it and declined to pay it. It is not stated when such written claim for damages was made. The suit for damages was not filed until July 24, 1906. It nowhere appears, therefore, either by allegation or by evidence, that any demand was made on the county within 12 months from the spring of 1905, when the claim for damages was alleged to have accrued. Treating the filing of the suit as a written demand, it does not show that such demand was made within the 12 months, for it was filed July 24, 1906.

Let the judgment of the court, refusing to grant a new trial, be                                                                          *Reversed.*