## DALLAS COUNTY v. BARR.  (No. 1793.)

(Court of Civil Appeals of Texas. Amarillo. April 27, 1921. Rehearing Denied June 1, 1921.)

1. **Eminent domain** ⬅⟹280—**Right of abutting owner to damages from elevating highway not affected by prior deed from his grantor for highway.**

Right of the grantee of land as abutting on a highway to damages thereto from the elevating of the roadway is not affected by the fact that prior to his deed the land for the highway had been conveyed in fee for highway purposes by the same grantor.

2. **Eminent domain** ⬅⟹101(1) — **Damages to abutting property from elevating highway recoverable.**

Under the Constitution as amended in 1876 (Const. art. 1, § 17) to provide that a person's property shall not be taken or "damaged" for public use without adequate compensation, unless by his consent, damages to the land abutting on a highway from elevation of the roadway by a viaduct and approach thereto are recoverable.

3. **Eminent domain** ⬅⟹285—**County liable for damage from its elevating highway.**

A county is liable for the damage to property abutting on a highway from its elevation of the roadway.

4. **Eminent domain** ⬅⟹141(3) — **Measure of damages difference in value before and after injury.**

The measure of damages to abutting property by the elevation of a highway is the difference in the value of the land before and after the change.

5. **Eminent domain** ⬅⟹300—**Finding of damages held supported by evidence.**

Evidence consisting of varying opinions as to value of land before and after elevation of highway *held* to support the jury's finding as to amount of damages therefrom to abutting property.

6. **Eminent domain** ⬅⟹148—**Interest from injury allowable as part of damages.**

Interest from time of injury to abutting property from elevation of highway is allowable as part of the damages, though at time of action they are unliquidated.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by J. H. Barr against Dallas County. Judgment for plaintiff, and defendant appeals. Affirmed.

Muse & Muse, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, Allen Charlton, and George Wright, all of Dallas, for appellee.

HUFF, C. J. The appellee, Barr, sued Dallas county and others for damages. The other defendants were dismissed and the cause proceeded to judgment against Dallas county. The damages alleged were to abutting property to a roadway by erecting a viaduct therein and constructing an approach to a bridge across Trinity river. It was alleged that the structure erected in the public road extended across the entire front of appellee's property, 261½ feet, and that its elevation ranged from 12 feet at the west corner to an elevation of 18 feet at the east corner, above appellee's property. The structure blocked and covered the entire roadway and prevented traffic in front of appellee's property. That the structure was composed of concrete, steel, and dirt, and impairs, injures, and destroys the easement of ingress and egress, light, view, and air, belonging to said property, by reason of it abutting on the said road and by reason of it having enjoyed the same for over 30 years. That the construction of the viaduct damaged appellee's property in the sum of $20,000, and that the structure was erected for public purposes without consideration and without his consent. The appellant answered that as a county it was not liable for such damages; that it was the owner of a 100-foot road-way strip of land, and that appellee and itself each deraigned title from a common source, Mrs. Sarah H. Cockrell; that in 1872 she conveyed by a duly recorded deed the 100-foot strip of land to a toll bridge company, for the purposes recited in the deed for constructing a toll bridge over the Trinity river, and therefrom a causeway, raised road or pike on said 100-foot strip of land, for public travel across the bottom lands; that the county had acquired the title to said bridge and strip of land from said company and for more than 30 years had been in possession thereof, with an elevated road thereon, and making valuable improvements upon said road; that the appellee, with actual and constructive notice of the foregoing, acquired his land in 1901; that he holds under a junior title in point of time of conveyance and recordation and that his said land was burdened with the servitude imposed by the senior conveyance and the user aforesaid of the public highway. The facts justify the conclusion that the title to the 100-foot strip of land upon which the road or causeway was erected is in Dallas county and has been used as a highway for 30 years or more and before the appellee purchased his block

of land. Mrs. Cockrell executed her deed to the toll company, upon the condition that it would locate and build a bridge across the river and a causeway over the strip of land which was completed in 1872, and after the bridge was completed the 100-foot strip was used by the public as a highway. After Dallas county took over the bridge in 1882, and the highway known as the Dallas and Ft. Worth Pike, it has worked the road or pike and improved it for public use as a highway. The tract of land owned by appellee is out of a block of land designated in a plat made and entered in a judgment in a partition suit between the heirs and Mrs. Cockrell, which is designated on the map as block 4. This plat and the field notes of his deed shows that the land of appellee only goes to the north line of the 100-foot strip upon which the roadway was established. That is, the evidence shows that appellee did not own the fee to any part of the 100-foot strip, but that the same was owned by the county, but controlled by it for road purposes. The facts establish that if the title was not in the county to the fee, it had an easement by prescription for the highway for the use and benefit of the public, and that appellee's land abutted thereon, and that he acquired his right to his land and went into possession long after the county's rights attached and bought his land with knowledge of the highway and with reference thereto. His tract of land is about three acres, and he had filled it up so as to make it 3 or 4 feet higher than the roadway on the highway some time in 1908. His work in filling had been gradual, but he had raised the grade of his lot something over 14 feet, and he had access to his land and egress from it to the highway and ingress and egress to and from the highway to his land; that he had two or three places where a passageway or roadways were prepared to enter his land from the roadway. The highway owned and worked by the county is a continuation of Commerce street in the city of Dallas, on the east side of the river. This highway crossed the bridge and connected with Commerce street. On the east side of the river there were a number of railroad tracks over which trains were being operated. The bridge was old and considered unsafe and inadequate for the growing traffic. It would seem the city, county, and the terminal road companies made some arrangement to put in a new bridge high enough to be above high water and of sufficient height to place a viaduct over the river and railroads. The work was completed some time in 1916, and on the west side of the river and in front of Barr's land the county elevated the road and erected an approach and a viaduct therein the entire length of appellee's property, the viaduct being 226 feet in front, so that it rendered his land inaccessible from that part on which the viaduct is placed and the remainder of his

front, 135 feet, the roadway was raised about 4 or 5 feet on an average above appellee's land. The viaduct is something near 19 feet above the land at the east corner thereof; that is, including the railing on the concrete structure of 226 feet, and an average height of 12½ feet, above his land, and an average of 4 or 5 feet on the 135 feet raised by dirt, in making the approach to the viaduct and bridge. The land is wholly inaccessible from the viaduct. It is admitted that the work was done by the county and others, without the consent of appellee, and without compensation unless his deed from Mrs. Cockrell to him amounted to such consent. That he has not been paid for any damages, and that he made his claim for damages to the county in proper form, which was refused. The case was submitted to a jury on two issues: The value of the land before the erection of the viaduct and its value after such erection. The jury found its value before was $10,000, and after the erection $2,000, and the judgment was rendered for the difference, $8,000, against appellant county, from which this appeal is prosecuted.

[1, 2] Appellant, by assignments, asserts the judgment is erroneous because there is no cause of action against the county shown, setting out various grounds in which it is asserted the facts fail to show a cause of action. We will endeavor to consider the grounds relied upon for reversal without specifically setting out the assignments themselves or discussing them as made by the brief. The defense of appellant and all his propositions are bottomed upon the assumption that the appellee's cause of action is for taking his land without his consent and without compensation. In this the appellant places its defense upon a false premise. This suit is for damages to abutting property. The mere fact that the title to the 100-foot strip of land was in the county for highway purposes does not justify the county so to use this strip for public use as to damage abutting property within the meaning of the Constitution. The title to the fee in the 100 feet is not a material fact in this case, as we conceive the issues. Under the old Constitution, prior to the amendment in 1876 (article 1, § 17), as we understand the authorities, an actual invasion of another's land and the taking thereof was required to authorize a recovery; but such is not now the only ground of recovery. Conceding that the deed by Mrs. Cockrell to the toll company, and by that company to the county, conveyed the 100-foot strip for highway purposes, and that such servitude was impressed upon this strip of land when appellee bought from the party to whom the land was set over in the judgment referred to in the statement of facts, the plat in the judgment shows appellee's property was abutting upon the highway. These facts at least tend to show that ap-

pellee and his vendors bought and sold this land with reference to this plat. In such case, the appellee acquired as appurtenant to his land all such rights, privileges, easements, and servitude as were represented by the map to belong to the land or to be in the owners thereof, and the sale and conveyance of the land, in accordance with the map, implies a grant or covenant for the owner of the land that the road shall never be appropriated by the owner of the road, inconsistent with that represented by the deeds to appellee, or the map, especially so where the change would tend to lessen the value of the land sold. Lamar County v. Clements, 49 Tex. 347; Oswald v. Grenet, 22 Tex. 94. We do not think the effect of Mrs. Cockrell's deed placing the title of the strip of land in the county for highway purposes estops appellee from asserting damages from the use of that land so as to injure the appellee's abutting property. The deed concluded any recovery for any damages to the land sustained by reason of the location of the highway which had occurred prior to the time appellee purchased it. The question really presented, as we understand the question, is whether in changing the grade or elevating the roadway above the appellee's land, or in erecting a viaduct in front of the land, he can recover damages. Under our Constitution no person's property can be damaged for public use without his consent and without adequate compensation. There was no compensation paid in this case, and the consent of appellee was not secured to effect the change. Whatever may have been the rule under the former Constitutions of this state, allowing compensation for the taking of land and in changing the grade of roads or streets, we believe the rule now to be, under our present Constitution, that—

"All damages resulting to abutting property by reason of lowering or raising the street in front of it is within the constitutional provisions in question and compensation must be made therefor. It is immaterial whether the whole surface of the street in front of it is raised or lowered, or only a part of it, as where a causeway is built in the middle or an embankment on one side or a sidewalk is only raised or lowered." 1 Lewis, Eminent Domain, § 348, and chapter "2, In Constitution."

In this case the testimony shows a viaduct was erected in the road, constructed of concrete and steel for 226 feet, and as part of the approach to the bridge 135 additional frontage was raised. The viaduct was 18 feet above at one point and more than 12 at another. This would come, it seems to us, under the general recognized right of recovery for damages.

"The construction of viaducts, bridges, and tunnels and approaches thereto, for the purpose of carrying streets over or under railroad tracks, streams or other obstructions, though often a great public utility, is frequently attended with great damage to property abutting on such improvements. All such damages are within the Constitution and may be recovered." Id., § 349.

The appellant cites the cases of Northern Transp. Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336, and Smith v. Corporation of Washington, 20 How. 135, 15 L. Ed. 858, and many other decisions as asserting the proposition:

"That persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country."

The same high tribunal, rendering the opinion in the two cases above, later held that the amendment of the Constitution of Illinois, authorizing a recovery for damages sustained for public use, modified the former rule. The latter case arose over the construction of a viaduct near the complainant's property, for which damages were claimed. The Supreme Court distinguished the case then in hand from those above cited and approved the rule announced by the Supreme Court of Illinois, and quoted from the case of Railway Company v. Ayres, 106 Ill. 518:

"Under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character—that it does not require that the damage shall be caused by a trespass or an actual physical invasion of the owner's real estate, but if the construction and the operation of the railroad or other improvements is the cause of the damage, though consequential, the party damaged may recover."

The Supreme Court of the United States said, in the interpretation of the later Constitution of Illinois, that they concurred in the opinion expressed by the Supreme Court of that state, and that the use of the word "damaged" was not meaningless and could have been used with no other intention than that given by the state court. Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638. Our own state Supreme Court has followed the Illinois rule in the interpretation of our Constitution, in a suit for damages to private property occasioned by grading and paving Elm and Preston streets in the city of Dallas, and 'in the exercise of lawful authority conferred upon the city by its charter. In speaking of the change in our Constitution, our court said:

"In other states, in whose laws a like change has been made, the right to recover damages where there has been no direct or physical invasion of the property is now recognized. Chicago v. Taylor, supra. The same doctrine was announced by this court in the case of Railway Co. v. Hall, 78 Tex. 169, 14 S. W. 259." Cooper v. City of Dallas, 83 Tex. 239, 18 S. W. 565, 29 Am. St. Rep. 645.

The change in our Constitution has been recognized by our Supreme Court and by our Courts of Civil Appeals, as giving a cause of action to owners of property for damages sustained by works for public use, in a number of cases, some of which are the following: Powell v. Railway Co., 104 Tex. 219, 135 S. W. 1153, 46 L. R. A. (N. S.) 615; Lumber Co. v. Railway Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870; Southwestern Tel. & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049; Id., 103 Tex. 128, 124 S. W. 627; Railway Co. v. Eddins, 60 Tex. 656; Railway Co. v. Fuller, 63 Tex. 467; Railway Co. v. Edrington, 100 Tex. 496, 101 S. W. 441, 9 L. R. A. (N. S.) 988; Railway Co. v. Hardin, 168 S. W. 1017; Texarkana v. Lawson, 168 S. W. 867; City of Marshall v. Allen, 115 S. W. 849; Shows v. City of Dallas, 172 S. W. 1137; Moore v. City of Dallas, 200 S. W. 870.

[3] It is insisted by appellant that the county cannot be held liable for damages where it is performing duties pertaining to public roads and bridges imposed upon it by law. It appears, in some portion of appellant's brief and argument, that it is contended, and it would have us infer, that the constitutional provision only applies to railway companies and others engaged in public work or service for the use of the public. The Constitution itself makes no such distinction as to who are liable for damages to the property of a citizen which is occasioned by work for the use of the public. It would seem the purpose of the safeguard in that document is to protect the individual against the sovereign power of the state, and that it gives him compensation where the public damages his property for its use. The majority in this country is the sovereign power, but the Constitution protects the minority in the enjoyment of their property. The individual cannot be made to suffer alone and sacrifice his property to the public use, but those for whose use it is appropriated or damaged must bear the burden. "Eminent domain" is simply the right or power of a sovereign state to appropriate private property for the purpose of promoting the general welfare. The sovereign power is in the state; but, for road and bridge purposes, it has delegated that power to the counties of the state, who may sue and be sued. So it may, and does, grant to public service corporations the right of eminent domain; but in granting such powers it is coupled with the declaration that counties or corporations shall not take, damage, or destroy the private property of the citizens in order to accomplish the contemplated purpose. The state, nor any of its agencies, in promoting the general welfare, can damage the property of the citizen without compensation, whether it be through county, city, railroad, or any public service corporation. Railway Co. v. Fuller, supra. It was several times held under the old Constitution of this state that counties could not take property for public use without compensation. Travis County v. Trogdon, 88 Tex. 302, 31 S. W. 358, Bounds v. Kirven, 63 Tex. 159; Norwood v. Gonzales, 79 Tex. 218, 14 S. W. 1057; Hamilton v. Garrnett, 62 Tex. 602; Watkins v. Walker, 18 Tex. 592, 70 Am. Dec. 298; see also, Heverbekken v. Hale, 109 Tex. at page 113, 204 S. W. 1162. We see no reason why, under the present Constitution, the county may damage such property for public use without being liable therefor, as it was liable before for the taking.

[4] The assignments which assert error in refusing to submit the cost or expense in making the necessary way of ingress or egress to appellee's land from the present viaduct or causeway, we think, present no error. It is now generally recognized that the measure of damages is the difference in the value of the land before the erection of the structure and after its erection.

[5, 6] Appellant also urges that the evidence fails to establish the value of appellee's land before the structure in the road and after, as found by the jury. There is no witness who gave his opinion that the value was as fixed by the jury. The witnesses, in giving their opinion, range widely. Some fixed it at a value of $30,000 before; some at $150 per front foot; some at $125 per front foot, before the erection, and that after the erection it depreciated from 25 to 50 per cent.; others that its value was enhanced by the structure several thousand dollars. It seems from the record that by agreement of the parties to this suit before the trial court, the jurors were permitted to view the premises as they then existed. In fixing the value we think much must be left to the judgment of the jury in considering the opinion of the witnesses as to the value of property. The evidence, we think, will support the findings of the jury in this case. Houston Belt, etc., v. Vogel, 179 S. W. 268; Buchanan v. Bowles, 218 S. W. 652, and authorities there cited. Interest may be allowed as damages. It is proper, we think, in this case, to calculate it from the date of the injury, and not from the date of the judgment. The fact that the amount claimed at the time of filing the suit was unliquidated does not affect the right to recover interest as part of the damages in this kind of action. Watkins v. Junker, 90 Tex. 584, 40 S. W. 11; Railway Co. v. Schofield, 72 Tex. 496, 10 S. W. 575.

We find no reversible error assigned, and the judgment of the trial court will be affirmed.