Weldon, J.,
delivered the opinion of the court:
The facts upon which it is alleged the claimant has a right to recover are briefly as follows: The claimant is the owner in fee of a tract of land known as Farrars Island, in'the James River, below the city of Richmond, in the State of Yirginia. He acquired title in the year 1888, as devisee of his uncle, Henry Oox, who owned the land before and during the late war. The tract consists of between seven and eight hundred acres, part in cultivation and part in timber. During the war the military authorities of the United States, under the command of General Butler, cut what is known as the “Dutch Gap Canal,” the purpose of which was to make a passageway for boats across a neck of land, and thus avoid a distance of six or seven miles, which was necessary to be made because of the circuitous route of the river.
After the war the owner, Henry Cox, the devisor, filled the upper end of the canal by an earthen causeway,which remained until the spring of 1870, when it was washed away, thereby causing an extraordinary flow of water through the canal.
In the year 1870 a board of commissioners met, in pursuance of a suggestion, as they state, of Maj. William P. Craighill, U. S. A., at the gap, and determined that the damages to the owner of the land was the sum of $7,500, and $100 per acre for the land appropriated in the construction of the canal.
The city of Richmond, being interested in the improvement of the river, paid the amount to the owner as assessed and *104 determined by the commission. The report appears in the findings of the court.
Before the construction of the canal and up to the year 1889 there were landings on the James River, as it ran by the land of the claimant, where the claimant was in the habit of shipping his produce and wood to the different markets by boats navigating said river.
After the claimant had acquired title as aforesaid the United States, in the improvement of the navigation of said river, deposited a large amount of earth, stone, and gravel in the bed of the river opposite the land of the claimant thereby decreasing the flow of water in the river and increasing it in and through the gap. As a result of such deposit, the landings of claimant became inaccessible except in a high stage of water or by boats of light draft. In making the deposit no earth was thrown upon the land of the claimant and no physical contact was made with the place of landing, the sediment -being dumped in the stream in the deeper portions of the water.
As a result of the acts of the defendants, the convenience and usefulness of said landings became and are very much impaired and the use and occupation of the land of the claimant was injuriously affected thereby, causing substantial damage to claimant.
The facts of this case present the question whether, when the United States in the improvement of a navigable river injure or destroy an adjacent landing by lessening the depth of water in the channel without physical contact with the landing and without the occupancy and appropriation of the land, there is any liability of the United States, under that provision of the Constitution providing for compensation to owners of private property where it is taken for public use.
It is argued by counsel for the claimant that the facts of this case show a taking of private property within the meaning of the Constitution and law, and that in this proceeding he is entitled to a judgment by way of compensation. It is insisted that there has been a diversion o,f the water from its ancient channel, and by that diversion an injury has resulted, which in law is equivalent to the taking of private property.
If in legal contemplation there has been a taking of private property as such, no doubt can arise as to the right of claim *105 ant to recover, as the Supreme and tbis court have held in many cases that an implied contract exists whenever the United States appropriates private property, acknowledging it to be such. The character of the property, whether corporeal or incorporeal, will not affect the question of liability. It is the right of value which the law intends to protect against the encroachments of appropriation on the part of the public. (Bridge Co. v. Dix, 6 Howard, 507.) A private easement is property within the meaning of the law as'much as the physical substance from which it springs. A person may have a private easement in flowing water not inconsistent with the public easement. (Walker’s American Law, 304.)
This case in its legal essence is by claimant’s counsel likened to the case of Pumpelly v. Green Bay and Miss. Canal Co. (13 Wall., 166).
In that case, as will be seen by an examination of its facts, there was an overflow of land, and the Supreme Court decided “That the backing of water so as to overflow the land of an individual, or any other superinduced addition of water, earth, sand, or other material, or artificial structure placed on land, if done under statutes authorizing it to be done for the public benefit, is such a taking as by the constitutional provision demands compensation.” It is also said, “ It is not necessary that the property should be absolutely taken in the narrowest sense of that word to bring the case within the protection of the constitutional provision.”
The Supreme Court, in the case of Yates v. Milwaukee (10 Wall., 497), had held before the Pumpelly Case, in substance, that the owner of land bounded by a navigable stream has certain riparian rights, whether his title extended to the middle of the stream or not, and that among these are free access to the navigable part of the stream and the right to make a landing or wharf for his own use or for the use of the public. In that case there was an interference with his right upon the margin of the water to go to and from the navigable portion of the lake, and the court, held that his right to do so could not be destroyed by an ordinance declaring his wharf a nuisance. The process by which the public authorities reached the determination that a nuisance existed was objectionable to the administration of law by which private rights are protected.
*106 The case of Tates is not tbis case in substance. In this case no encroachment has been made upon the landings of claimant. His approach and departure from the land side remain intact; but by the acts of the defendants the stream has been diminished in depth so that he can not approach the landing with large boats as formerly.
Whatever may be said of the liability of the defendants, they were, as they understood it, not in the exercise of the power of eminent domain in the improvement of the river. It was in pursuance of the general policy of river and harbor improvement as recognized by acts of Congress for many years.
Upon the right of the Government to make improvements of that character we quote the very apt and appropriate words of Mr. Justice Strong in the case of South Carolina v. Georgia (93 U. S.,4):
“That the power to regulate interstate commerce and commerce with foreign nations, conferred upon Congress by the Constitution, extends to the control of navigable rivers between States — rivers that are accessible from other States, at least to the extent of improving their navigability — has not been questioned during the argument, nor could it be with any show of reason. From an early period in the history of the Government it has been so understood and determined. Prior to the adoption of the Federal Constitution the States of South Carolina and Georgia together liad complete dominion over the navigation of the Savannah Biver. By mutual agreement they might have regulated it as they pleased. It was in their power to prescribe, not merely on what conditions commerce might be conducted upon the stream, but also how the river might be navigated, and whether it might be navigated at all. They could have determined that all vessels passing up and down the stream should pursue a defined course, and that they should pass along one channel rather than another where there were two. They had plenary authority to make improvements in the bed of the river, to divert the water from one channel to another, and to plant obstructions therein at their will. ***** * *
“'It is not, however, to be conceded that Congress has no power to order obstructions to be placed in the navigable waters of the United States, either to assist navigation or to change its direction by forcing it into one channel of a river rather than the other. It may build light-houses m the bed of the stream. It may construct jetties. It may require all navigators to pass along a prescribed channel, and may close any other channel to their passage. If, as we have said, the United *107 States have succeeded to the power and rights of the several States, so far as control over interstate and foreign commerce is concerned, this is not to be doubted.”
As was said by this court in the case of Gibson (29 C. Cls., R., 28), “ the right of the Government to improve the navigable rivers of the United States is beyond question. Millions of dollars have been spent every year for that purpose; and since the celebrated case of Gibbons v. Ogden (8 Wheaton, 11) the absolute jurisdiction of the United States over the navigable streams of the country has been unquestioned. In that case it is said: “ The acts of the legislature of the State of New. York giving to Robert E. Livingston and Robert Fulton the exclusive navigation of the waters within that State by boats moved by fire or steam for a term of years are repugnant to that provision of the Constitution of the United States which authorizes Congress to regulate commerce, so far as said act prohibits vessels licensed according to the laws of the United States for carrying on coasting trade from navigating said waters by means of fire or steam.”
If theUnited States had a right to improve the James River, and acted in pursuance of that right, upon what principle can they be held for the consequential damage incident to the •exercise of that right? The question of the State’s liability in the improvement of a highway became the subject of judicial determination in the case of Transportation Company v. Chicago (99 U. S., 635), and we again quote from that eminent jurist, Mr. Justice Strong:
“Acts done in the proper exercise of governmental powers and not directly encroaching on private property, though by its consequence may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents or give any right of action. This is supported by an immense weight of authority.”
Speaking of the Pumpelly Case and the Eaton Case, in the 51 N. H., the court says: “ In those cases there was a physical invasion of the real estate of the private owner and practical ouster of his possession.”
If the defendants, in the improvement of the river, have not taken the property of the claimant within the meaning of the Constitution and law, no contract has arisen, and whatever *108 the claimant has suffered in consequence of the acts of the United States is either damnum absque injuria or is the result of a wrong done upon the part of the defendants. Every damage does not necessarily give a right of action. The doctrine of damnum, absque injuria embraces a multitude of cases where serious inconvenience and damage arise without a corresponding right to recover satisfaction in a judicial proceeding. The owner of property within the proper exercise of dominion may do many acts resulting in damage to others and no action will lie for such acts. If the United States had a right to improve the river by a diversion of the water -in and through the gap and they exercised that right without taking the property of the claimant, then no contract could arise, and if damage was done the claimant, the grievance would sound in tort, and for that there is no jurisdiction in this court.
In the case of Gibson (supra) we had occasion to examine and decide the rights of the parties in a matter very similar to the grievance complained of in this case. In that case we said, “In an action to recover damages for impairing a navigable waterway between the main channel of a river and a wharf by the erection of a dike in a stream, which, however, does not encroach upon the claimant’s property, is an action for damages for an injury without there being the element of a contract and is nor within the jurisdiction of the court.” There being no contract established by the facts of this ease, no action arises, and if any wrong has been done the claimant, we have no jurisdiction to adjudicate his damage, and the petition is, therefore, dismissed.