CHAMBERLAIN vs. THE WESTERN TRANSPORTATION COMPANY.

At common law, a carrier of passengers by water is liable for the value of the baggage of a passenger destroyed by fire, though the fire occasioning the loss may have happened without any want of skill, care or foresight on the part of the carrier.

Under that law, the carrier's liability extends to all losses not produced by the act of God, or the public enemies.

This liabllity is not affected by the provisions of the act of congress, passed March 3, 1851. ( *U. S. Stat. at Large, vol. 9, p.* 635,) declaring that no owner of a ship or vessel shall be liable for any loss or damage which may happen to any "goods or merchandise" shipped thereon, by reason of fire happening to, or on board the ship or vessel, unless it is caused by the design or neglect of the owner.

The terms "goods or merchandise," used in the statute, should not be so extended as to exonerate a carrier from his common law liability for the loss of a passenger's baggage by fire.

THE evidence in this action proved that the defendant in the month of August, 1864, was the owner of the propeller Racine, which was engaged in the business of carrying freight and passengers for hire upon the lakes between the cities of Chicago and Buffalo and the intermediate ports. And that she had on board, and was in charge of, a competent master, pilot, engineer, and crew, and had been duly inspected, examined and licensed as a vessel for carrying passengers.

On the 9th day of August, 1864, Hamilton Ward and wife took passage on board of such propeller, at the city of Detroit, for the city of Buffalo, and paid the usual fare for such trip, which included the carriage and transportation of their baggage as well as themselves. Their baggage was taken upon the propeller, and they, together with it, were carried from Detroit a portion of the distance down Lake Erie, when, between two and three o'clock in the morning of the next day, the propeller took fire, and was, with the cargo, including such baggage, entirely consumed. The fire was not caused by lightning, or the public enemies, but the cause of it was unknown. When the propeller was first discovered to be on fire, the fire was in and about the fire hold. After the

Chamberlain *v.* Western Transportation Company.

fire was discovered, the officers and crew made all proper efforts, and used all diligence to arrest its progress and secure its extinguishment, but without success.

The claim against the defendant for the loss of such baggage was assigned to the plaintiff, before the commencement of this action. Upon these facts the court directed a verdict for the plaintiff for the value of such baggage, subject to the opinion of the general term.

*A. P. Lanning,* for the plaintiff.

*John Hubbell,* for the defendant.

*By the Court,* DANIELS, J. The defendant in this action was a common carrier of the baggage lost by the fire which consumed the propeller and her cargo, and as such, at common law, was liable for its value, even though the fire which occasioned the loss may have happened without any want of skill, care, or foresight on the part of the defendant or its agents. (*Hollister* v. *Nowlen,* 19 *Wend.* 234. *Cole* v. *Goodwin, Id.* 251.) Under that law, the carrier's liability extended to all losses not produced by the act of God, or the public enemies. (*Miller* v. *Steam Navigation Co.,* 6 *Seld.* 431. *Merritt* v. *Earle,* 29 *N. Y. Rep.* 115.)

But this principle, the defendant contends, is not applicable to the present case, on account of the restrictions of the common law liability of common carriers by water, contained in the act of congress, passed March 3, 1851. (*U. S. Stat. at Large, vol.* 9, 635.) The first section of this statute is the only one contained in it having any direct bearing upon the rights of the parties to the present controversy. That provides: "That no owner or owners of any ship or vessel shall be subject or liable to answer for, or make good to any one or more person or persons, any loss or damage which may happen to any goods or merchandise whatsoever, which shall be shipped, taken in, or put on board any such ship or vessel,

by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners."

This is not a remedial statute, and it is not therefore entitled to be liberally construed. Statutes of that description, are such as are enacted for the purpose of supplying defects in the existing law—excluding those, which like the one under consideration, divest, or take away rights conferred and secured by the common law. (1 *Black. Com.* 86. 1 *Kent's Com.* 501, 502. *Sedgwick on Stat. Law,* 41.) For that reason it should be construed strictly. (*Id.* 313.) But the application of this rule does not require that the statute should be subjected to a strained or unnatural meaning. The object of it is to restrict the terms which are used to their plain and obvious meaning, without extending them beyond it by construction; for the rules of the common law are not to be changed by doubtful implications. The current of modern authority inclines to favor the reading of statutes according to the natural and obvious import of the language in which they are expressed, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. (*Waller* v. *Harris,* 20 *Wend.* 555, 561. *Gibson* v. *Jenny,* 15 *Mass. Rep.* 205, 206. *Wilbur* v. *Crane,* 15 *Pick.* 284.) The object to be attained in all cases is to ascertain the intention of the legislature, which it is the duty of courts of justice to carry into effect. And that can best be done by considering the language of the statute, with reference to the occasion and necessity of the law, the mischief felt, the objects and remedy in view, the subject or business to which the enactment relates, and by a general view of the whole, and every part of the law, taken, compared and considered together. (1 *Kent's Com.* 310. *Tonnele* v. *Hall,* 4 *Comst.* 140. *The People* v. *Utica Ins. Co.,* 15 *John.* 358, 380, 381.)

Whether this statute can have the effect of exonerating the defendant from liability in this action, will depend upon the

Chamberlain *v.* Western Transportation Company.

signification to be given to the words, "goods and merchandise," which express the subject matter to which it was intended to relate, and which must be determined, as far as they can be rendered applicable, under the rules of construction already mentioned.

These words, in their most general sense, would undoubtedly be sufficient to include the baggage of passengers on board the ship or vessel destroyed by the fire. For in that sense, they comprehend all personal, or moveable property. But there is reason for concluding, from the language of the act itself, that such was not the sense they were intended to have there. For when it became necessary to use words of that signification in other sections of the act, these were not selected for the purpose of expressing it, as they most likely would have been if that had been the understanding of them by congress. In those other sections, the words made use of to describe movable or personal estate generally, are "property, goods or merchandise," "goods, wares, or merchandise, or any property whatever," and "goods, wares, merchandise, or other property," (§§ 3, 4 *and* 6,) which indicate very clearly that the words "goods and merchandise," as used in the first section, were not intended or supposed to include all such things as the word "property" very manifestly does. The manner in which the different phrases are used, indicates the conviction of congress, that there was a very clear distinction between them. If that had not been the case, and the same subject matter, only, had been intended to be described in all these sections, it is highly probable that the same terms would have been repeated for that purpose. For in that way a greater degree of simplicity and uniformity would have been secured in the form as well as the substance of the law.

The word "property," which was added to the others, previously used, when it became desirable to embrace all such articles as might under any circumstances be made the subject of transportation by water, is one of very extensive signification, and would reasonably and fairly embrace every

article of that description ; while at the same time the use of
it in this statute, stands to some extent in contrast with the
words "goods and merchandise," indicating that they were
intended to have a more restricted scope and meaning.   The
intention plainly appears, of distinguishing the subject ex-
pressed by one set of phrases, from those included within the
others ; of discharging the liability of the ship owner entirely,
only when arising out of the destruction of the ordinary
subject of commercial traffic by fire, and limiting it in all
other cases, where it originates in the malfeasance or misfeas-
ance of the master, officers, mariners, passengers, or other
persons on board, to the value of his interest in the ship.
There is no other construction of the statute, as a whole, that
will harmonize all its parts.   For, if the word "goods" is
to be received in its most comprehensive meaning, then no
possible advantage or use can be secured by the word
"property."   To give effect to the latter, the former must
be, to some extent at least, controlled in the generality of its
signification.

How far it should be controlled, must depend upon the
general subject to which the act relates, as well as the manner
in which those words had previously been used in the business
or occupation affected by it.   For where a statute is enacted
in technical words, they are to be received and understood in
that sense, unless the intention to use them differently is
disclosed in it.   (*Sedgwick on Statutory Law,* 261.)   And
where terms of art, or peculiar phrases are made use of, it
must be supposed that the legislature have in view the sub-
ject matter about which such terms or phrases are commonly
employed.   (*Id.* 262, 3. *Ex parte Hall,* 1 *Pick,* 261, 2.)

The statute at present under consideration was enacted as
a regulation of commerce, under the power given to congress
by the constitution, " to regulate commerce with foreign
nations and among the several states."   And to do that,
made use of commercial phrases, which, by the usage of trade,
had, before it was passed, acquired a known and well desig-

nated signification. The reasonable supposition would be that these terms or phrases were intended to be used as they were understood in the pursuits, and by the persons to which the statute was designed to be addressed. By giving that construction to them, no difficulty will be found in ascertaining and declaring their legal meaning. And that will leave nothing whatever to discretion, or for the exercise of authority seemingly arbitrary; while at the same time it will harmonize the statute with the existence of well settled legal principles, which should only be disturbed when the intention to change them is more clearly indicated than it can be found to be in this instance.

In the business of commerce, the phrases "goods and merchandise" have been long understood as designating only commodities bought and sold by merchants and traders; while that of "baggage" was as clearly understood to relate only to the clothing and other conveniences which a traveler carried with him on his journey. The one was always readily and easily distinguishable from the other. And so far as these terms, and the subjects they represent, have employed the attention of courts of justice, that distinction has been maintained. It has therefore been held that neither money nor articles, or samples of merchandise, can properly be included under the term "baggage." And when carried as such, the carrier is not liable for their loss. (*Orange County Bank* v. *Brown*, 9 *Wend.* 85. *Pardee* v. *Drew*, 25 *Wend.* 459. *Hawkins* v. *Hoffman*, 6 *Hill*, 586, 589.) These cases decide that ordinary baggage has never been extended beyond such things as a traveler usually carries with him for his personal convenience in the journey. It must follow, of course, as the term "baggage" will not include merchandise, that the latter term is equally exclusive of baggage.

The other of these terms has not been presented for judicial consideration in quite so direct a manner, so far as its bearing is concerned, upon the carrier's liability. But so far as its commercial import is involved, the rulings of the courts,

and the conclusions of text writers, have been fully as explicit and definite. And in that manner the effect of it as a commercial term, has been very clearly ascertained and established in the law. The controversies in which this has been done, have related chiefly, if not entirely, to the liability of underwriters upon policies of marine insurance, where the subject of the insurance was described as "goods and merchandise." In these cases, those terms were held to include only such cargo as was laden on board the ship for the purposes of commerce, which excluded even the captain's clothing and the ship's provisions, where she carried only passengers. They were also held not to include jewels, ornaments, cash, clothing, &c. not designed for trade, but carried about, or belonging to the persons of those on board. (*Arnold on Insur.* vol. 1, 216–220. *Phillips on Ins.* 237, §§ 423–427. *Parsons on Mercantile Law,* 437, 438. *Parsons on Maritime Law,* vol. 2, 200.) And see *Hill* v. *Patten,* (8 *East,* 373,) where it was held that the term "goods" did not include the ship's outfit, but extended only to "the wares or cargo for sale laden on board the ship."

When it is remembered that the rules applied to the construction of contracts are very much the same as those applied to the construction of statutes, it will be seen that these authorities are entirely applicable to the case in hand; particularly as the contracts involved, related to the same business as the statute was intended to effect, and required in the course of their adjudication, the settlement of the legal meaning of the same terms, incorporated in it, to describe the subject it was to operate upon. In the former case the object to be attained was the intention of the parties, so far as it could be ascertained from the language they had used; and in the latter the intention of the legislature as it might be indicated by the same means. (*Mallan* v. *May,* 13 *Mees. & Wels.* 511. *Rice* v. *Mead,* 22 *How.* 445, 448. *McCluskey* v. *Cromwell,* 1 *Kernan,* 593, 601, 602, 604. *The People* v. *Cowles,* 3 *id.* 359, 360, 363.)

Chamberlain *v.* Western .Transportation Company.

From the consideration already given to these terms, as they are found in this statute, which was enacted for the sole purpose of defining the rights, and restricting the liabilities of parties in commercial transactions, and in view of their legal signification settled by the authorities already cited, the conclusion very readily follows that they should not be so extended as to exonerate the defendant from its common law liability for the loss of the passenger's baggage in this case. For demands of that character, the carrier must still respond, up to the value of his interest in the vessel, the same as though the statute in question had not been enacted.

Whether the owner would be liable upon the ground that the fire should be presumed, under the circumstances disclosed, to have resulted either from carelessness or want of skill in the construction of the vessel, or by the master, officers or mariners in charge of her, in the course of her navigation, it is not therefore necessary to consider, at this time. For the reasons already given, the plaintiff is entitled to judgment upon the verdict.

Judgment accordingly.

[ERIE GENERAL TERM, February 12, 1866. *Grover, Marvin, Daniels* and *Davis,* Justices.]