Fred A. Young, J.
On October 15, 1954, at about 10:00 p.m. Francis Edgett and his wife, Erwina Edgett, were returning home from a performance at a drive-in theatre located on Route No. 7 near Oneonta, New York. The Edgetts were riding in a 1950 Dodge half-ton pickup owned by Mr. Edgett and operated by him on that occasion. As the vehicle proceeded north on New York State Highway, No. 318, also known as Route No. 28, and when at a point abreast of a maple tree, the cab thereof was struck by a large branch which fell from *507 the maple tree. The tree was located within the State’s right of way at the northeast intersection of Lake Avenue and Route No. 28 in the vicinity of Goodyear Lake, New York.
The trunk of the tree was about 15 to 18 feet high, at which point it divided into three main branches. One branch, about 15 to 18 inches in diameter and 35 to 45 feet in length, formerly extended northeast over the property of the Reverend Brown. The branch which fell upon the Edgett vehicle was approximately 16 to 20 inches in diameter and 35 to 50 feet in length and had extended diagonally across Route No. 28. Another branch, approximately the same size as the other two, ran in a southwesterly direction. At one time, a small branch, about 5 inches in diameter and 15 to 18 feet in length, extended across Lake Avenue.
The inner core of the tree and limb, especially in the vicinity of the crotch thereof, was badly decayed and the tree itself was in a weak and dangerous condition. At the point where the offending limb joined the trunk there was a 15-year-old decayed hole two and one-half inches in diameter, with some healing around the edges. There was a considerable amount of decayed area in the crotch of the tree.
There is no dispute as to the manner in which the accident occurred or the injuries sustained by the claimants. The limb fell without warning onto the vehicle, so there is no question of contributory negligence on the part of the claimants.
The State contends that to all outward appearances, the tree was in a healthy condition so that it had no notice of the true condition of the tree or the limb. The State also relies on the fact that there was a hurricane in progress at the time of the accident. To support this latter contention, the Attorney-General introduced weather reports to show that new wind records were established in Binghamton on October 15, the fastest mile being 72 miles per hour with a peak gust of 64 miles per hour at 8 :54 p.m. and again at 9 -.46 p,m. It also introduced evidence to show that the highest winds recorded during October, 1954, at Albany was 42 miles per hour, though no specific date in October is given for this wind speed. However, Binghamton and Albany were approximately 70 to 75 miles distant from the scene of the accident. The county resident engineer testified that there were 35 trees and 252 tree limbs down in Otsego County on the date of the accident. However, he gave no further details as to the time or place where these trees were damaged. On the other hand, all of the witnesses who traversed the roads in the vicinity of the accident, in close proximity to the time of its occurrence, testi *508 fied there was little or no evidence of fallen limbs or trees. One witness said there was a small limb down nearby, but this was nothing unusual. All of the witnesses, who were on the scene of the accident and testified with respect to weather, were in agreement that the earlier rain had ceased and the weather in the area had cleared before the time of the accident. The record is devoid of any proof that there was a storm of unprecedented proportions raging in the area at the time the tree fell upon the Edgett vehicle, but, assuming there was a storm, there is still the question of the State’s negligence as a proximate or concurrent cause. (Merritt v. Earle, 29 N. Y. 115; Michaels v. New York Cent. R. R. Co., 30 N. Y. 564; Wood-ruff v. Oleite Corp., 199 App. Div. 772; Caputo v. State of New York, Claim No. 31296 [unpublished].) As indicated supra, the negligence of the State is dependent upon the question of notice.
For the most part the bark was apparently in good condition and most of the branches of the tree bore foliage. Because of these manifestations, the State relies on Rose v. State of New York (282 App. Div. 1099). However, there was one small branch of the tree which stood straight up from the center thereof devoid of any bark and pitted by woodpeckers. In addition thereto, there was the hole mentioned supra and the decay at the crotch of the tree which existed for a long period prior to the accident.
We believe that the Rose case relied upon by the State is readily distinguishable from the instant case and that the decision in the Rose case can have no application here. In the instant case there were definite outward visible indications of decay while the tree was standing and the limb was in place. In the Rose case there was no outward indication of any decay visible to the eye while the tree was standing. In the instant case there was no evidence that the tree, from which the limb fell, had ever been given any particular inspection, in spite of the fact that a complaint had been made. In the Rose case there had been an inspection, including a probing of the tree to a depth of one and one-half inches, only three months prior to the accident and there was no complaint registered with the State in relation to the tree in the Rose case. The evidence in the present case established that another large branch and a smaller branch had already broken off this tree over two years before this accident leaving visible a scar and tear on the tree and causing the tree to be overbalanced. There was no such proof in the Rose case. The *509 records of the two cases indicate that there are many more distinguishable features.
Sometime in 1949 or 1950 the small branch, which extended over Lake Avenue, fell into that thoroughfare. At the time of its fall, the limb was dead and the wood thereof had been weakened by dry rot.
In late July or early August, 1952, the large branch, which extended towards the Brown property, fell upon the Brown lawn where it remained for several weeks and was clearly visible from Route 28. The fall of this branch left a scar upon the tree some 24 inches long and 15 to 18 inches wide with a 6-inch dark, decayed area in the center. Not only was this scar visible from the highway, but it also rendered the crotch rot and dead branch more observable to the passerby. All of these conditions existed during the patrol season when the State maintained a four-man highway crew patrolling this area once a week and one of whose duty was to locate and remove trees and branches imperiling the highway.
In September, 1953, the members of this crew also trimmed the trees at the scene of the accident, supposedly cutting down all dried or decayed branches and all branches under 14 feet. Several members of the patrol had occasion to use Lake Avenue in going to and from Goodyear Lake, thus passing right by the tree. However, they never looked at it very closely and never observed the defects and signs of decay apparent upon a casual inspection. The patrolmen, including the foreman of the patrol, stated they did not happen to look up at the crotch of the tree and never made any special inspection of the tree, although the scars and decay were visible from the highway and from Lake Avenue. Furthermore, the large branch, which had fallen in the Summer of 1952, lay for a considerable time in full view. How the highway patrol overlooked this was never explained. Another condition easily observable was the unbalancing of the tree after over one third of its upper portion had fallen.
The highway patrolmen are bound to perform their duties in a diligent and thorough manner and if they had done so in the present instance, they would have noticed the conditions alluded to supra and have discovered that the tree was in a decayed and dangerous condition. All witnesses who travelled the highway including Reverend Brown’s wife, Judge Porteus’ daughter and several other disinterested witnesses, all saw the large limb that had fallen and that lay on the ground for several weeks. Yet not one of the State’s employees who *510 travelled this highway saw the limb during that period. It was their duty to patrol and inspect. Yet they saw nothing. People are bound to see what by the proper use of their senses might be seen and especially so when, they are employed for that very purpose. The trunk of the tree itself was but a very few feet from the very edge of the road and in the right of way itself. There had been a complaint about the tree and the reasons were very apparent indicating that the tree should be removed. We cannot account for the action of the State employees. The court will conclude this discussion by stating that it was quite evident from the testimony of the State employees that they had never paid any particular attention to this tree, in spite of complaints and existing conditions which a proper inspection would have indicated. The State is liable for allowing a dangerous condition to exist which should have been observed by the patrolmen in the performance of their ordinary duties. (Messinger v. State of New York, 183 Misc. 811; Brown v. State of New York, 2 Misc 2d 307.)
The claimant also introduced evidence to show actual notice. John O. Young, who lived in the vicinity of Goodyear Lake and who at one time operated a restaurant in close proximity to the scene of the accident, testified that in 1949 or 1950, after the small limb had fallen onto Lake Avenue, he went to the office of the State resident engineer in Oneonta and told a man, who said he was the engineer, that the branch, which eventually fell upon the Edgett vehicle, was dangerous. Young admitted that he wanted some of the branches on the tree trimmed because they obscured a sign advertising his restaurant, but he insisted that he told the engineer that the limb was dangerous.
On the other hand, Atkinson, the State resident engineer, testified that he had no recollection or record of Young’s visit or any complaint with respect to the tree in question. He admitted however, he usually kept no record of oral complaints. Apparently no immediate action was taken upon Young’s complaint, although some branches were trimmed subsequent thereto. In July, 1952, upon orders from his supervisors, the resident engineer made a personal inspection and survey in Otsego Oounty with a view to locating decayed and dangerous trees. In the course of this survey, he inspected the scene of the accident, but had no particular recollection of the tree involved herein. The inspection coincided with the fall of the lafge limb upon the Brown property, but there is nothing to indicate whether the fall of the limb was prior to or subse *511 quent to such inspection. Young was positive in Ms testimony while Atkinson merely had no recollection. Young was a disinterested witness and Atkinson an interested one. (Noseworthy v. City of New York, 298 N. Y. 76.) We have made a finding that the State also had actual notice that the tree was in a dangerous condition.
The State is obligated to maintain its highways in a safe condition for travel. This includes obstructions and defects adjacent to and above the highway which might reasonably be anticipated to result in injury and damage to the users thereof. (Doulin v. State of New York, 251 App. Div. 767, affd. 277 N. Y. 558.) The State was negligent in its maintenance of said highway at said place in failing to make proper, sufficient and adequate inspection thereof under the circumstances herein and to take the necessary precautions to protect the users of the highway from danger and injury. (Juliano v. State of New York, 273 App. Div. 936, motion for leave to appeal denied 297 N. Y. 1036; Jacobs v. State of New York, 177 Misc. 70.) In view of this we have made a finding that the sole proximate cause of the injuries suffered by the claimants was the negligence of the State of New York and we have made an award for the damages sustained by the claimants in accordance with an accompanying decision.