15579

BLAND v. CITY COUNCIL OF SUMTER

(27 S. E. (2d), 498)

April, 1943.

*Mr. Raymon Schwartz,* of Sumter, S. C., Counsel for Appellant,

*Mr. Shepard K. Nash,* Sumter, S. C., Counsel for Respondent.

November 2, 1943.

The Opinion of the Court was delivered by MR. ASSO-CIATE JUSTICE BAKER:

This proceeding was brought by appellant to procure a writ of mandamus to require the City Council of Sumter, under its charter as amended on December 24, 1891, 20 St. at Large, p. 1475, and through its Mayor and Councilmen, to appoint a commissioner for the assessment of damages alleged to have been sustained by the appellant by reason of an alteration of a street in the City of Sumter, South Carolina.

The pertinent section of the charter of the City of Sumter, provides: "That the City Council [of Sumter] shall have power and authority to close all such roads, streets and ways within the said city as they may deem necessary, by sale of the freehold therein, either at private or public sale, as they may judge best for the interest of the said city; and they shall have power and authority to lay out, adopt, alter, widen and open all such streets, roads and ways as they may from time to time deem necessary for the improvement and convenience of the said city: Provided, That the owners of lands over which any such road, street or way may pass, and any person damaged by the closing or from the altering of any such street, road or way shall be duly compensated therefor by the City Council, and wherever any

road, street or way is to be laid out, closed, opened or widened, in case the said City Council and the owners of land over which the same shall pass, or the persons damaged by the closing or altering as aforesaid, cannot agree upon the amount of compensation to be paid to such owners or persons, the same shall be assessed by three Commissioners, to be appointed, one by the City Council, one by the land owner or person damaged, and the third by the two Commissioners thus appointed; and in case any land owner shall neglect or refuse to appoint a Commissioner within ten days after notice so to do, then the Chairman of the Board of County Commissioners of the County of Sumter shall appoint a Commissioner, who, with the one appointed by the City Council, shall select the third Commissioner; Provided, That either party may appeal from such assessment to the Court of Common Pleas for said County, by serving written notice of such appeal upon the other party within five days after such assessment shall have been made, when the issue of value shall be submitted to a jury."

Appellant is the owner of a certain lot located on the Southeast corner of the intersection of Oakland Avenue and where Main Street and Manning Avenue converge. The husband of appellant was the former owner of the premises, which he conveyed to his wife, together with any and all rights of action which he might have had by reason of the alteration of the street.

Prior to the alteration of the street in question, Main Street at Oakland Avenue broadened out into two forks, one fork thereof was a continuation of Main Street and the other was known as Manning Avenue or a continuation of Highway No. 15 and No. 521. Appellant's lot and filling station was on a level with the street which was the main artery for traffic north and south.

On April 16, 1938, the City of Sumter passed a Resolution whereby it consented that the State Highway Department make certain improvements in the said Highways Nos.

15 and 521 through the City of Sumter, and after inspecting with the officials of the said Highway Department the location and grades of the proposed project, resolved, and as a basis for said Resolution, cited Act No. 787 of the General Assembly of South Carolina, approved March 31, 1930, that the City approve the alignment, grades, and in fact the plans of the Highway Department and set forth in said Resolution "the State Highway Department is hereby relieved of all responsibility and liability on account of property damage incident to the improvement of this Highway through the incorporated limits of the City."

The southeast prong of the fork, known as Manning Avenue, crossed a number of tracks of the Atlantic Coast Line Railroad Company, and in order to overcome a hazard to the public, the elevation of the street was raised and an overhead bridge was constructed pursuant to the Resolution above referred to, beginning at Oakland Avenue and extending partially on Manning Avenue and partially on Main Street until it reached the right of way of the Atlantic Coast Line Railroad Company, then terminating on Manning Avenue, south of the railroad tracks.

The record shows that the width of Main Street and Manning Avenue where they converge at the corner of Oakland Avenue was about eighty to one hundred feet. The appellant's premises extended along Manning Avenue for a distance of fifty-eight feet and at the southern portion of her lot, the said Main Street—Manning Avenue had a width of approximately one hundred thirty-five feet.

On either side of the bridge, and on a level with the lot of the appellant, there was left on Manning Avenue, after the construction of the bridge, opposite the property of appellant, a passageway seventeen and one-half feet wide, but coming into Sumter from the south, one can barely see the property of the appellant by reason of the elevation of the remaining portion of the original Manning Avenue.

Since the bridge starts at Oakland Avenue the street is raised from that point and appellant's property, with relative position to the bridge, is sitting much lower, whereas before the alteration of the said street and the erection of the bridge, it faced upon a wide boulevard, more heavily travelled than any other street into or out of the City of Sumter.

Feeling that she was entitled to have the question of the city's liability determined, appellant, through her attorney, addressed a notice to the members of City Council requiring and requesting them, as Council for the City of Sumter, to appoint a commissioner under the charter of the City of Sumter for the purpose of assessing damages. This, the City Council refused to do and appellant subsequently brought her verified petition for mandamus.

The Honorable G. B. Greene, then presiding Judge of the Third Judicial Circuit, issued a rule to show cause why a writ of mandamus, prayed for in the petition, should not issue and directed that a copy of the petition and order be served upon the respondent, which was done.

To this rule, the respondent made return and to its return appellant filed her traverse. The return of respondent alleged the refusal to appoint a commissioner for the reason that there was no legal liability to the petitioner, and that if an appointment should be made of a commissioner to assess damages, it would thereby waive the right to have the liability determined; that petitioner obtained no rights by assignment from her husband; that petitioner's predecessor in title had suffered no compensable damage to the property, and that there was ample and adequate ingress and egress from appellant's property, both from Oakland Avenue, Manning Avenue and Main Street; that the damage, if any, was from a diversion of traffic, which was not compensable, and that the damage, if any, was merely different in degree from that suffered by all others in that part of the

city; that petitioner, if she had any claim for damages, had a remedy at law.

The matter was heard by the Honorable William H. Grimball at the Spring term of the Court of Common Pleas for Sumter County. He filed his order denying appellant a writ of mandamus, and held that mandamus was not the proper remedy. Whereupon, appellant prosecuted this appeal.

The appellant has stated a number of "Questions Involved", and her exceptions are numerous, but the fundamental issue before the Court in a broad sense is: Did the trial Judge err in refusing to issue a writ of mandamus? Necessarily, there are some collateral issues to be touched upon.

One of these collateral issues is whether the State Highway Department erected the bridge and approaches thereto under the authority of Act 787, Acts of 1930, Code of 1942, Sections 5890-3, 5890-4, or by the authority of Act 967, Acts of 1938, Code of 1942, Section 5891 (4, 5), notwithstanding the fact that the resolution of the City of Sumter referred to the Act of 1930, and was passed prior to the approval by the Governor of the Act of 1938.

There is no question but that the State Highway Department executed this work with the entire consent and approval of the Mayor and City Council of the City of Sumter, and that the actual work was not commenced until after the Act of 1938 became effective. Prior to the Act of 1938, the Highway Department could not have lawfully expended funds with which to do the work because the Act of 1930 confined the construction and maintenance of State highways by the State Highway Department within towns to incorporated towns of less than twenty-five hundred (2,500) population. *Martin v. Saye,* 147 S. C., 433, 145 S. E., 186; *Fant v. Highway Department,* 164 S. C., 187, 162 S. E., 262. The Court will of course take judicial notice of the fact that the City of Sum-

ter has, and had in 1938 and 1939, a population in excess of twenty-five hundred (2,500).

However, as we view the matter, it can make no material difference to the litigants here, except possibly as to the amount of recoverable damages, that the work was performed by the Highway Department under the authority conferred by the Act of 1938, Section 5891(5) of the Code of 1942, since it is admitted that the Highway Department performed the work and paid for the construction of the bridge, after being relieved by the City of Sumter "of all responsibility and liability on account of property damages incident to the improvement of this highway (Highways Nos. 15 and 521) within the corporate limits of the City;" and the Act of 1938 provides, "That any person, firm or corporation hereafter suffering damages to property or injuries or death by reason of the construction, reconstruction or maintenance of any highway or section of highway, as provided in this Act, within the limits of any municipality of the State shall have such right of action against the municipality in which said damages, injuries or death may be suffered as is now provided by law applicable to municipalities, and the remedy thus afforded shall be exclusive."

Another collateral issue attempted to be raised by appellant is the constitutionality of the Act of 1938. Such issue was not raised in the Court below and is not now properly before this Court and will not be discussed. Whether the limit of the damages recoverable as fixed by the Act of 1938 is applicable under the facts of this case is not now being passed upon. We have discussed the two acts (1930 and 1938) mainly for the purpose of showing that under either, the remedy of appellant is the same; and that at the time the State Highway Department expended the money and performed the work in the construction of this bridge and its approaches, it had the lawful authority so to do.

We now come to the main issue. Under the Acts of 1930 and 1938, the municipalities for whose benefit highways are improved are responsible for damages to property resulting from the improvements. In this case the City of Sumter through its authorized officers consented to the improvement and the altering of a street on which the appellant's property abuts, and by resolution, as aforesaid, agreed to relieve the State Highway Department of all responsibility and liability on account of property damages incident to the improvement of this highway. The City charter (the applicable section having hereinbefore been set out) provides the method of ascertaining damages.

In the light of the cases hereinafter cited and quoted from, it would appear to be unnecessary to burden this opinion with either a statement of the law or citation of authority as to when a writ of mandamus should issue. And this is also true as to what the words "alter" and "altering," appearing in the charter, include when applied to a street. Likewise, it is also unnecessary to discuss the distinction between condemnation cases and cases involving the "taking of property" without compensation, decided by this Court, which without a thorough analysis appear to be at variance with the cases hereinafter cited, where a different rule applies in a proceeding brought under a city charter.

The charter of the City of Greenville contains a provision or section almost identical with that of the City of Sumter herein set out, and this Court has on several occasions rendered opinions in which such section was involved.

The first case which comes to our attention is *Paris Mountain Water Company v. City Council of Greenville,* 53 S. C., 82, 30 S. E., 699, 701. Section 30 of the City of Greenville charter is almost verbatim the section of the City of Sumter charter now under consideration. In that case the Court stated:

"* * * The respondent's attorney contends that the work was not done under said section, but under an Act en-

titled 'An act to provide for grading and paving the streets, public ways, and alleys of the city of Greenville,' approved December 22, 1891 [20 Stat., 1372]. There is nothing in this act which in any manner prevents the recovery of damages in those cases mentioned in Section 30. Both, the act of 1891 and Section 30, can have full effect, without conflicting with each other. The rights of the parties to this action must therefore be determined in accordance with the provisions of Section 30.

"* * * The authorities differ very widely as to the meaning of the word 'alteration,' when used in connection with laws relating to streets and highways. The difficulty of rendering a definition that will be applicable to all cases arises from the fact that its meaning depends so largely upon the context in each case. In this case we are aided in our interpretation by the following circumstances: (1) If the word 'alter' is construed as having reference to a change in the grade of the street, effect can be given to all the words of the section; while on the other hand, if it is interpreted as relating to course or direction, then it is ineffectual, as the words 'lay out,' 'adopt,' 'widen,' 'open', and 'close' are sufficiently broad to cover every case involving course or direction. (2) The damages allowed under said section were not intended to be restricted to such as might be claimed under the constitutional provision that private property shall not be taken for public use without just compensation being first made therefor, as *closing* a street is not the *taking of property*.

"The section was intended to be very sweeping, and not only to give compensation for *property taken,* but *damages* for injuries sustained. * * *"

The next case was *Garraux v. City Council of Greenville,* 53 S. C., 575, 31 S. E., 597. In that case, after the plaintiff had applied to the City of Greenville offering to submit the question of damages to commissioners as provided in the city charter, and the city denying its liability, refused to

appoint a commissioner, the plaintiff brought action in the Court of Common Pleas for damages from the lowering of the grade of the street by the City Council. From an order of nonsuit in the Circuit Court, an appeal was taken to this Court, which order was affirmed but in so doing the Court stated:

"Neither the order granting the nonsuit nor the record before us discloses the grounds upon which the nonsuit was based. As the testimony was sufficient to carry the case to the jury, provided defendant is liable to an action for damages resulting from grading its streets without negligence, we assume the ruling was based upon the proposition that defendant is not liable to such action. Whether the defendant is so liable will depend upon whether there is any constitutional or statutory provision making the municipality liable for compensation for injury resulting from the proper exercise of its governmental powers, and whether, if any remedy is provided therefor, such remedy is exclusive. The only provision of the Constitution bearing upon this question is in Article 1, Sec. 17, where it is provided: 'Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor.' The great weight of authorities is to the effect that a change in the grade of a street which diminishes the value of adjacent property is not a *'taking'* of property, within the constitutional provision above quoted. Cooley's. Const. Lim., 671. According to 2 Dill. Mun. Cor., Sec. 990, 'Municipal corporations, acting under the authority conferred by the legislature to make and repair, or to grade, level, and improve, streets, if they keep within the limits of the street, and do not trespass upon or invade private property, and exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner, whose lands are not actually taken, trespassed upon, or invaded, for consequential damages to his premises, unless

there is a provision in the charter of the corporation, or in some statute, creating the liability.  *  *  *  And this is so although the grade of the street has been before established, and the *adjoining property owner had erected buildings or made improvements with reference to such grade.'* The authorities in support of the doctrine stated are very numerous. We cite only the case of *Transportation Co. v. Chicago*, 99 U. S., 635 [25 L. Ed., 336]. This Court, in the very recent case of *Paris Mountain Water Co. v. City Council of Greenville*, 53 S. C. [82 at page] 89, 30 S. E., 699, stated, arguendo, that closing a street is not the taking of property. There is, therefore, no implied liability, under the Constitution, resting upon a municipality to make compensation for injury resulting from grading its streets.

"Is there any statute imposing such liability? Appellant argues that Section 30 of the charter of Greenville (19 St. at Large, p. 106) provides for such liability. Respondent contends that this section does not embrace liability for injuries resulting from merely grading a street. Without setting out that section in full, or discussing again the point, it is sufficient to say that in the case of *Paris Mountain Water Co. v. City Council, supra,* this Court held that the provision in said section that 'any person damaged by the closing or from altering of any such street  *  *  *  shall be duly compensated therefor by the city council,' imposes the liability upon the city council to make compensation for injury resulting from grading a street, as the term 'alter' includes any substantial change in the structural formation of the street, such as grading of the character mentioned. It is settled, therefore, that the charter of the City of Greenville makes the city liable to make compensation for injuries resulting from grading its streets in the manner complained of. But the question still remains, does this statute afford a remedy, and is such remedy exclusive? The said Section 30, *supra,* goes on to provide:  *  *  *."

After quoting the applicable portion of Section 30 of the Greenville charter, the Court continued: "* * * Here, then, is a remedy. Is it exclusive? We think so. In reference to the remedy for compensation for right of way provided by statute, this Court has repeatedly held that such remedy is exclusive. *Leitzsey v. Water-Power Co.,* 47 S. C. [464], 484, 25 S. E., 744 [34 L. R. A., 215] and cases cited therein. The fact that the city council refused to appoint a commissioner does not affect this question, any more than a refusal by the clerk of the Court to discharge some duty imposed upon him in right of way condemnation proceedings. The city council could be compelled by mandamus to perform the ministerial duty of moving in the matter of appointing a commissioner, just as the chairman of the board of county commissioners of Greenville County, who is required to appoint a commissioner in the event the person damaged fails to appoint one within the time required. In this way both parties have the power and means to use the remedy provided by the statute. Mr. Dillon, in 2 Mun. Cor., Sec. 992, states that where the statute authorizing the opening and improving of streets provides a specific remedy, or a remedy other than an ordinary civil action, that remedy alone can be pursued; and in the case of *Transportation Co. v. Chicago, supra,* the Supreme Court of the United States, speaking in reference to street improvements by a city, said: 'The remedy, therefore, for a consequential injury resulting from the State's action through its agents, if there be any, must be that, and that only, which the legislature shall give.

\* \* \*

The case of *Gibson v. City Council of Greenville,* 64 S. C., 455, 42 S. E., 206, involved an appeal from an order of mandamus whereby the City Council of Greenville was required to assess the amount of damages suffered by the plaintiff through the alteration of the grade of Main Street in the City of Greenville, as provided in Section 30, of the charter of the city. Mandamus was resisted solely on the

.ground that "liability in this case is not conceded, but is denied, nor has it been adjudged liable heretofore."

In affirming the order appealed from, the Court stated: "* * * In the case of *Garraux v. Greenville,* 53 S. C., 578, 31 S. E., 597, this Court sustained the contention of the City of Greenville that Section 30 of the city charter (19 St. at Large, p. 114) afforded a remedy to an adjoining lot owner to obtain compensation for damages resulting to his lot from an alteration of the grade of the street, and that such remedy is exclusive. That remedy contemplated the assessment of compensation by three commissioners to be appointed—one by the city council, one by the land owner or person damaged, and the third by the two commissioners thus appointed. The Court further said that the city council could be compelled by mandamus to perform the ministerial duty of appointing a commissioner. In the case just cited, the city council of Greenville defeated an action for damages at common law on the ground that the statutory remedy is exclusive, and now attempts to defeat the remedy provided by statute on the ground that it has not been heretofore adjudged liable to make compensation, and that such liability is denied, and that such issue cannot be determined in the statutory remedy. This is no defense whatever against the performance of its plain ministerial duty under the statute; the undisputed facts being that W. G. Gibson is the owner of the lot abutting on Main Street, in said city; that the grade of said street has been altered by the city council; that the lot owner claims to have been damaged thereby, and demands compensation; that the lot owner has requested the city council to appoint a commissioner to assess compensation, under Section 30 of the city charter, and that the city council has refused to make such appointment."

*Stone v. City of Greenville,* 111 S. C., 78, 96 S. E., 520, 521, was another appeal from an order of the Circuit Court requiring the City Council to appoint a commissioner to assess damages alleged to have been done to plaintiff's lot

by changing the grade of the street upon which it abuts. The City Council resisted the plaintiff's application for the order on the ground: "(1) That no damage had been done; and (2) that, if so, the city was not liable for damages caused adjacent lot owners by changing the grade of the street." In affirming the order, the Court again construed the word "alter" to include damage caused by a change in the grade of streets.

As hereinbefore pointed out, the Act of 1938, Section 5891(5) of the Code of 1942 provides "that any person * * * hereafter suffering damage to property * * * by reason of the construction, reconstruction or maintenance of any highway or section of highway * * * within the limits of any municipality of the State shall have such right of action against the municipality in which said damages * * * may be suffered *as is now provided by law* applicable to municipalities, and *the remedy thus afforded shall be exclusive.*" (Italics added.)

The "remedy thus afforded" for appellant's alleged right of action is the one outlined in the charter of the City of Sumter, and is specifically made exclusive.

In our opinion, it was error to refuse the writ of mandamus requiring the City Council of the City of Sumter to appoint a commissioner to represent the city in the assessment of any damage the appellant may have suffered by reason of the alteration of the street upon which her property abuts, and unless the said City Council appoints a commissioner within twenty days from the filing of the remittitur herein, the clerk of this Court is directed to issue an order of mandamus requiring the said City Council to appoint such commissioner.

Let it be understood that the appointment of a commissioner by the City Council of the City of Sumter is not an admission on the part of the city that appellant has suffered damages to her property. And if the respondent herein is desirous of having its legal liability estab-

lished before an appropriate tribunal, it should timely institute the proper action to have the proceedings before the commissioners stayed until such legal liability is first determined. See *City Council of Greenville v. Mauldin,* 64 S. C., 438, 42 S. E., 200.

Reversed.

MR. ASSOCIATE JUSTICE STUKES and CIRCUIT JUDGES T. S. SEASE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.